UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DANIA GISSELL CRUZ MEJIA, MARIA ELISA BUESO MEJIA, MARTHA L. MARTINEZ BALLEZA, ESTHER SANCHEZ TORRES, CLAUDIA WILSON, DORA PIMEDA, individually and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BROTHERS PETROLEUM, LLC D/B/A BROTHERS FOOD MART, BROTHERS FOOD MART AND IMAD FAIEZ HAMDEN<br><br>Defendants. | CIVIL ACTION NO.: **12-2842**<br><br>SECTION: **C(3)**<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO PROCEED AS A COLLECTIVE ACTION AND FACILITATE NOTICE UNDER 29 U.S.C. § 216 (b)**<br><br>District Judge Helen G. Berrigan<br><br>**JURY TRIAL DEMANDED** |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO PROCEED AS A COLLECTIVE ACTION AND FACILITATE NOTICE UNDER 29 U.S.C. § 216(b)**

Plaintiffs Dania Gissell Cruz Mejia, Maria Elisa Bueso Mejia, Martha L. Martinez Balleza, Esther Sanchez Torres, Claudia Wilson and Dora Pineda, individually and on behalf of all others similarly situated (collectively, "Plaintiffs") respectfully submit this Memorandum in Support of their Motion to Proceed as a Collective Action and Facilitate Notice Under 29 U.S.C. § 216(b) ("Motion").

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

This lawsuit concerns Brothers Petroleum, LLC d/b/a Brothers Food Mart, Brothers Food Mart and Imad Faiez Hamden (collectively, "Defendants") which are in the business of operating convenience stores that, among other things, sell prepared food including fried chicken throughout the State of Louisiana. Defendants flouted their obligations under the Fair

Labor Standard Act ("FLSA") by refusing to pay Plaintiffs and other similarly situated non-exempt, hourly employees proper wages, including minimum wage and overtime.

Of particular relevance to this Motion, Defendants maintained a set of common employment policies and practices which violate the provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA"). Specifically, Defendants forced Plaintiffs and other similarly situated workers to work, at minimum, 50 hours per week and frequently 70 to 80 hours per week. Despite this grueling work schedule, Defendants, in violation of the FLSA, refused to pay Plaintiffs and other similarly situated workers all of the wages and/or overtime compensation owed to them for all of the hours they worked. 29 U.S.C. § 207. Defendants also systematically refused to pay Plaintiffs and other similarly situated workers for any "off-the-clock" work they were required to perform outside of their regular work schedules. In addition, Defendants automatically deducted the cost of required uniform shirts and nametags from Plaintiffs' wages causing their wages to, at times, fall below the federally mandated minimum wage in violation of 29 U.S.C. § 206. Finally, Defendants failed to maintain proper time records, thereby violating the record-keeping requirements of the FLSA.

Under the FLSA and the case law interpreting it, individuals may bring "collective actions" on behalf of themselves and all others "similarly situated." 29 U.S.C. § 216(b). Here, as a result of Defendants' unlawful policies and practices, Plaintiffs have filed this Motion pursuant to the FLSA's collective action provision in order to provide workers similarly situated to Plaintiffs with a reasonable opportunity to collectively litigate their claims. *Id*. Plaintiffs contend that the class of similarly situated individuals to be notified of this lawsuit should be defined as follows:

All current and former non-exempt, hourly employees who have been employed by

Brothers Petroleum, LLC d/b/a Brothers Food Mart or Brothers Food Mart in the State of Louisiana during the time period of November 28, 2009 through the present.

As set forth below, members of the collective are similarly situated for purposes of notice and conditional certification because, *inter alia*: (1) they all have similar job positions and requirements; (2) they all are subject to similar terms and conditions of employment; (3) they all are subject to a set of common policies and/or practices that require or permit them to perform work in excess of forty hours in a week that is not compensated in violation of the FLSA; and (4) they all are subject to a set of common policies and practices that result in the deduction of the cost and maintenance of required uniform shirts and nametags from their wages in violation of the FLSA.

Hundreds of other current and former employees may be eligible to join this collective action. To date, eight of Defendants' current and former employees have filed opt in consent forms to pursue their FLSA claims. Dkt. Nos. 1-2, 43, 44, 45, and 48. Because there are many other similarly situated workers who may not be aware of this lawsuit or of their right to proceed in this forum, Plaintiffs respectfully request permission to send notice to putative members of the collective to make those individuals aware of their rights and to allow them to make an informed decision on whether to opt in to this collective action. Finally, because the limitations period on Plaintiffs' FLSA claims does not cease to run until an individual opts in to this case, each of Defendants' hourly non-exempt employees who are or were no longer subject to Defendants' illegal compensation and deduction schemes are losing money (in the form of damages) with each day that passes without receiving notice of this lawsuit.

## II. FACTUAL BACKGROUND

The actions taken by Defendants described herein are part of a widespread pattern and practice of mistreatment to which Plaintiffs and members of the collective have been subjected for many years. *See* Declaration of Maria Mejia at ¶ 2 (attached as **Exhibit A**)(hereinafter referred to as "M. Mejia Decl."); Declaration of Esther Torres at ¶ 2 (attached as **Exhibit B**)(hereinafter referred to as "Torres Decl."); Declaration of Dania Mejia at ¶ 2(attached as **Exhibit C**)(hereinafter referred to as "D. Mejia Decl."); Declaration of Melvin Medrano at ¶ 2(attached as **Exhibit D**)(hereinafter referred to as "Medrano Decl."); Declaration of Martha Belleza at ¶ 2(attached as **Exhibit E**)(hereinafter referred to as "Belleza Decl."); Declaration of Jose Jovel at ¶ 2(attached as **Exhibit F**)(hereinafter referred to as "Jovel Decl."); Declaration of Dora Pineda at ¶ 2(attached as **Exhibit G**)(hereinafter referred to as "Pineda Decl."); Declaration of Claudia Wilson at ¶ 2(attached as **Exhibit H**)(hereinafter referred to as "Wilson Decl."). The illegal scheme perpetrated by Defendants upon Plaintiffs and members of the collective – systematically denying them full compensation for all hours worked and automatically deducting the cost of uniforms and nametags from paychecks – has been in effect for many years and has resulted in an illegal windfall to Defendants in the form of potentially millions of dollars. Plaintiffs have joined this lawsuit, and many of them have signed the attached Declarations, to recover the unpaid wages, overtime compensation, and expenses owed to them as a result of Defendants' ongoing violations of the FLSA.

### A. Plaintiffs Were All Employed as Cashiers, Cooks, and/or Store Operators at Brothers Food Marts in Louisiana

Plaintiffs and members of the collective are current and former non-exempt hourly employees who have been employed at a "Brothers Food Mart" convenient store in the State of

Louisiana at some point since November 28, 2009 through the present. Dkt. No. 37, at ¶ 2; M. Mejia Decl. at ¶ 2; Torres Decl. at ¶ 2; D. Mejia Decl. at ¶ 2; Medrano Decl. at ¶ 2; Belleza Decl. at ¶ 2; Jovel Decl. at ¶ 2; Pineda Decl. at ¶ 2; Wilson Decl. at ¶ 2.  While working for Defendants, Plaintiffs all held similar job positions of cashier, cook, and store operator. Dkt. No. 37, at ¶¶ 14-19; M. Mejia Decl. at ¶ 2; Torres Decl. at ¶ 2; D. Mejia Decl. at ¶ 2; Medrano Decl. at ¶ 2; Belleza Decl. at ¶ 2; Jovel Decl. at ¶ 2; Pineda Decl. at ¶ 2; Wilson Decl. at ¶ 2.

> **B. All Plaintiffs Were Victims Of Defendants' Common Policy And/Or Practice Of Refusing To Pay Them For All The Straight-time And Overtime Hours Worked**

Defendants exercised complete control over the time, place and manner of Plaintiffs' work. Dkt. No. 37, at ¶ 20.  Defendant dictated Plaintiffs schedules, the place and time they worked, who they would be working with, and the hours they were required to work.  Dkt. No. 37, at ¶ 20.  For example, Plaintiffs were required to all work at least 12 hour shifts.  *See* M. Mejia Decl. at ¶ 3; Torres Decl. at ¶ 3; D. Mejia Decl. at ¶ 3; Medrano Decl. at ¶ 3; Belleza Decl. at ¶ 3; Jovel Decl. at ¶ 3; Pineda Decl. at ¶ 3; Wilson Decl. at ¶ 3.  Until July 2012, Defendants required Plaintiffs to work approximately 60-80 hours per week, yet failed to compensate them for all of the straight-time and overtime hours they worked. Dkt. No. 37, at ¶¶ 21-23; *See* M. Mejia Decl. at ¶ 3 (72 hours per week); Torres Decl. at ¶ 3 (72 hours per week); D. Mejia Decl. at ¶ 3 (72 hours per week); Medrano Decl. at ¶ 3 (72 hours per week); Belleza Decl. at ¶ 3(80 hours per week); Jovel Decl. at ¶ 3 (72 hours per week); Pineda Decl. at ¶ 3 (60-80 hours per week); Wilson Decl. at ¶ 3 (72 hours per week).  In July 2012, Defendants reduced Plaintiffs' hours to 50 hours per week, but continued to fail to pay overtime wages.  Dkt. No. 37, at ¶ 22.  In addition, Plaintiffs were not compensated for "off-the-clock" time spent, *inter alia*, transporting Defendants' supplies and products between

stores and traveling to and from Defendants' main office in Plaintiffs' personal vehicles. Dkt. No. 37, at ¶ 25; M. Mejia Decl. at ¶ 6; Torres Decl. at ¶ 6; D. Mejia Decl. at ¶ 6; Medrano Decl. at ¶ 6; Belleza Decl. at ¶ 6; Jovel Decl. at ¶ 6. In addition, Defendants failed to reimburse employees for mileage and other expenses incurred performing these tasks. *Id.;* M. Mejia Decl. at ¶ 6; Torres Decl. at ¶ 6; D. Mejia Decl. at ¶ 6; Medrano Decl. at ¶ 6; Belleza Decl. at ¶ 6; Jovel Decl. at ¶ 6. This "off-the-clock" work occurred on a class-wide basis (*i.e.* regardless of time period, department, or supervisor) and resulted in substantial losses to Plaintiffs. Plaintiffs virtually always worked in excess of 40 hours per week, yet were not paid for all of the straight-time and overtime hours they worked. M. Mejia Decl. at ¶¶ 3, 8; Torres Decl. at ¶¶ 3, 8; D. Mejia Decl. at ¶¶ 3, 8; Medrano Decl. at ¶¶ 3, 8; Belleza Decl. at ¶¶ 3, 8; Jovel Decl. at ¶¶ 3, 8; Pineda Decl. at ¶¶ 5,7; Wilson Decl. at ¶¶ 5,7.

### C. All Plaintiffs Were Victims Of Defendants' Uniform Policy And/Or Practice Of Deducting The Cost of Uniforms and Nametags From Plaintiffs' Wages

Defendants required employees to wear uniform shirts and nametags while performing their job duties. Dkt. No. 37, at ¶ 26; M. Mejia Decl. at ¶ 7; Torres Decl. at ¶ 7; D. Mejia Decl. at ¶ 7; Medrano Decl. at ¶ 7; Belleza Decl. at ¶ 7; Jovel Decl. at ¶ 7; Pineda Decl. at ¶ 6; Wilson Decl. at ¶ 6. Defendants deducted the cost of the shirts and nametags from Plaintiffs' paychecks. *Id.* Defendants' policy and practice resulted in employees' wages, at times, slipping below the mandated minimum wage and/or cut into overtime compensation in violation of the FLSA. Dkt. No. 37, at ¶ 26.

### D. All Plaintiffs Were Victims Of Defendants' Standardized Policy And/Or Practice Of Failing to Maintain Proper Time Records

Defendants failed to maintain proper time records, thereby violating the record-keeping requirements of the FLSA. Dkt. No. 37, at ¶ 24; M. Mejia Decl. at ¶ 8; Torres Decl. at ¶ 8; D.

5

Mejia Decl. at ¶ 8; Medrano Decl. at ¶ 8; Belleza Decl. at ¶ 8; Jovel Decl. at ¶ 8; Pineda Decl. at ¶ 7; Wilson Decl. at ¶ 7.  As discussed above, Plaintiffs were not paid for all of the straight-time and overtime hours they worked.  *Id.* In fact, Plaintiffs were paid in cash in amounts that neither reflected all of the hours Plaintiffs worked, nor any overtime compensation.  *Id*.

### E. Defendants' Policy And/Or Practice Of Deducting The Cost of Uniforms and Nametags From Plaintiffs' Wages From Plaintiffs' Wages Caused Plaintiffs' Wages To Fall Below The Prevailing Minimum Wage Rate

As set forth above, in violation of the FLSA, Defendants' deductions for the cost of uniforms and nametags from Plaintiffs' wages caused Plaintiffs' respective hourly wage rates to fall below the prevailing minimum wage rate and/or cut into overtime compensation.  Dkt. No. 37, at ¶ 26.

## III. ARGUMENT

### A. Collective Action Certification And Notice To Members Of The Collective Is Appropriate Pursuant To Section 216(b)

The FLSA's "collective action" provision allows one or more employees to bring a collective action on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Although the FLSA does not explicitly define the term "similarly situated," district courts have broad discretion to allow a party asserting FLSA claims on behalf of others to notify potential "similarly situated" plaintiffs that they may choose to "opt in" to the suit. *See, e.g., Hoffman-La Roche,* 493 U.S. at 169. Court-authorized notice protects against "misleading communications" by the parties, resolves the parties' disputes regarding the content of any notice, prevents the proliferation of multiple individual lawsuits, assures joinder of additional parties is accomplished properly and efficiently, and expedites resolution of the dispute. *Id*., at 170-172.

6

Under Section 216(b), an employee need only show that he is suing his employer for himself and on behalf of other employees "similarly situated." *See, e.g., Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1213-16 (5th Cir. 1995), *overruled on other grounds*, 539 U.S. 90, 123 (2003). The plaintiff's claims and positions must be similar to those of the potential opt in plaintiffs, but they need not be identical. *See, e.g., Kuperman v. ICF International, et al.,* No. 08-565, 2008 WL 4809167, at *5 (E.D. La. Nov. 3, 2008) ("In the end, § 216(b) of the FLSA does not require that plaintiffs be identical…"); *Camp v. The Progressive Corporation, et al.,* No. 01-2680, 2002 WL 31496661, *4 (E.D. La. Nov. 8, 2002) (same); *Allen, et al. v. McWane, Inc.,* No. 06-CV-158, 2006 WL 3246531, at *2 (E.D. Tex. Nov. 7, 2006) (same). The plaintiff need only demonstrate a reasonable basis for his or her allegation that a class of similarly situated persons may exist. *See, e.g., Lima v. International Century Catastrophe Solutions, Inc.*, 493 F.Supp.2d 793, 798 (E.D. La. 2007).

Court-facilitated notice to a class in a collective action under the FLSA is warranted when a plaintiff demonstrates that there are others who may wish to opt in to the collective action and who are "similarly situated" with respect to job requirements and pay provisions. *See, e.g., Hipp v. Liberty Nat'l Life Ins. Co.,* 164 F.R.D. 574, 575-76 (M.D. Fla. 1996); *Belcher v. Shoney's, Inc.,* 927 F.Supp. 249, 251 (M.D. Tenn 1996); *Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991); *Garner v. S.D. Searle Pharm.*, 802 F.Supp. 418, 419 (M.D. Ala. 1991). ***The standard for collective action notice is a "lenient" one.*** *Mooney*, 54 F.3d at 1214; *Johnson et al. v. TGF Precision Haircutters, Inc.*, 319 F.Supp.2d 753, 754 (S.D. Tex. 2004) (commenting that the standard applied is a lenient one, usually resulting in "conditional certification" of a representative class, to whom notice is sent and who receive an opportunity to "opt-in").

### B. Collective Action Certification Is A Two-Stage Process

Although the Fifth Circuit has not formally adopted an approach to the "similarly situated" inquiry under Section 216(b), the overwhelming choice of district courts within the Fifth Circuit, including the Eastern District of Louisiana, is the two-stage approach delineated in the case of *Lusardi v. Xerox Corp.*[1] *See, e.g., Prejean v. O'Brien's Response Mgmt., Inc.*, No. CIV.A. 12-1045, 2013 WL 5960674 at *4 (E.D. La. Nov. 6, 2013)( "district courts in this circuit agree that the *Lusardi* approach has been embraced more often in the Fifth Circuit than the Spurious Class Action approach found in *Shushan*); *Baricuatro, et al. v. Industrial Personnel and Management Services, et al.,* No. CIV.A. 11-2777 (E.D. La. Nov. 9, 2012)(applying the two-stage *Lusardi* approach)(Order attached as **Exhibit I**); *Lang v. DirecTV, Inc.*, *et al.*, No. 10-1085G1, 2011 WL 6934607, at *7 (E.D. La. Dec. 30, 2011) (the *Lusardi* approach is the "more common" approach and is routinely employed by Eastern District of Louisiana); *Fernandes da Silva v. M2/Royal Construction of Louisiana, LLC*, No. 08-4021, 2009 WL 3565949, at *3 (E.D. La. Oct. 29, 2009) (finding that the two-stage approach in *Lusardi* is the predominant test for collective action certification in the Fifth Circuit); *Melson v. Directech Southwest, Inc.*, No. 07-1087, 2008 WL 2598988, at *4 (E.D. La. June 25, 2008) (applying the "preferred" *Lusardi* approach); *Ebbs v. Orleans Parish School Board,* No. 04-1198, 2007 WL 2127699, at *2 (E.D. La. July 24, 2007) (noting that the Fifth Circuit "historically" employs the *Lusardi* approach); *Kenyata-Bean, et al. v. Housing Authority of New Orleans*, *et al.*, No. 04-2592, 2005 WL 3543793, at *6 (E.D. La. Nov. 18,

---

[1] *Lusardi v. Xerox Corp* 118 F.R.D. 351 (D.N.J.1987), *mandamus granted in part, appeal dismissed,* 855 F.2d 1062 (3rd Cir.1988), *vacated in part, modified in part, and remanded,* 122 F.R.D. 463 (D.N.J.1988), *aff'd in part, appeal dismissed,* 975 F.2d 964 (3rd Cir.1992).

2005) (*Lusardi's* two-stage approach has been "unanimously adopted" by district courts within the Fifth Circuit); *England v. New Century Financial Corp.*, 370 F.Supp.2d 504, 509 (M.D. La. 2005) ("The Eastern District utilized the *Lusardi* approach because it found that the *Lusardi* approach has been 'embraced' more often in the Fifth Circuit than the 'Spurious Class Action' found in *Shushan*"[2]). The first stage of the *Lusardi* analysis – the one at issue in this Motion – is commonly known as the "notice stage" or "conditional certification stage." *Mooney*, 54 F.3d at 1213-14. The second stage is routinely referred to as the "merits" stage.

### 1. At the conditional certification stage, the similarly situated standard is lenient and may be proven through pleadings and declarations alone

*The similarly situated standard is lenient at the notice stage "and typically results in 'conditional certification' of a representative class."* *Mooney*, 54 F.3d at 1213-14; *see also, e.g., Camp*, 2002 WL 31496661, *4 ("The cases in which conditional certification has been granted or upheld are clear that the 'similarly situated' standard at this stage is *lenient*, plaintiff's burden is not heavy, the evidence needed is minimal and the existence of some variations between potential claimants is *not* determinative of lack of similarity") (emphasis in original). The court at this stage determines whether the plaintiff and potential opt in plaintiffs are "similarly situated" based upon the allegations in a complaint and any declarations that have been submitted. *Mooney*, 54. F.3d at 1213-14; *see also, e.g., Lang*, 2011 WL 6934607, at

---

[2] A second approach to the "similarly situated" determination was delineated in *Shushan v. Univ. of Colorado*, 132 F.R.D. 263, 265 (D. Colo. 1990). The *Shushan* approach uses the requirements under Fed. R. Civ. P. 23 of numerosity, commonality, typicality, and adequacy of representation to discern whether notice should be issued. However, the Tenth Circuit (which includes the *Shushan* court) has rejected this approach and deemed it improper to apply the Fed. R. Civ. P. 23 factors to FLSA cases. *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001). Here, although Plaintiffs advocate for the *Lusardi* two-stage approach because it is the one overwhelmingly adopted by district courts in the Fifth Circuit, including the Eastern District of Louisiana, the evidence is sufficient to support certification under either approach to the "similarly situated" inquiry.

*7; *Lackey, et al. v. SDT Waste & Debris Services*, No. 11-1087, 2011 WL 6329909, at *3 (E.D. La. Dec. 19, 2011; *Smith v. Offshore Specialty Fabricators, Inc.*, No. 09-2985, 2009 WL 2046159, at *3 (E.D. La. July 13, 2009); *Ebbs*, 2007 WL 2127699, at *2; *Kenyata-Bean,* 2005 WL 3543793, at *7. This similarly situated determination is a lenient one, requiring nothing more than allegations that the potential opt in plaintiffs were subject to a single, decision, policy, or plan. *Mooney*, 54 F.3d at 1213-14; *see also, e.g., Lang*, 2011 WL 6934607, at *7 (the similarly situated standard was met where the plaintiffs and class members performed similar job functions under the same employment scheme); *Lackey,* 2011 WL 6329909, at *3 (the similarly situated standard was met where the defendant's policies were company-wide); *Fernandes da Silva*, 2009 WL 3565949, at *5 (the similarly situated standard was met where the plaintiffs presented allegations that the defendant had a systematic policy of denying overtime wages to plaintiffs and members of the class); *Ebbs*, 2007 WL 2127699, at *2 (the similarly situated standard was met where the plaintiffs and class members were victims of the defendant's common, potentially unlawful pay policy); *Kenyata-Bean,* 2005 WL 3543793, at *7 (the similarly situated standard was met where the defendant had a common policy of denying overtime to the plaintiffs and class members); *Donohue v. Francis Services, Inc.,* No. 04-170, 2004 WL 1161366, at *2 (E.D. La. May 24, 2004) (the similarly situated standard was met where employees were subject to the same company-wide policies); *Crain v. Helmerich and Paine International Drilling Company,* No. 92-0043, 1992 WL 91946, at *2 (E.D. La. April 16, 1992) (the similarly situated standard was met where employees were subject to the same company-wide policy that deprived them of payment for time spent in job-related meetings and training).

### 2. The merits stage is typically precipitated by a defendant's motion for decertification, which is not filed until after discovery is complete

Under the *Lusardi* two-stage approach, once the court makes the preliminary determination that the similarly situated standard is met, the case proceeds as a collective action throughout discovery. *Mooney*, 54 F.3d at 1214. Discovery is relevant thereafter both as to the merits of the case and for the second step in the collective action certification procedure, wherein the court evaluates conflicting evidence developed in discovery to test the validity of its preliminary decision at the notice stage. *Id*. The court's "similarly situated" analysis at the merits stage is typically precipitated by a defendant's motion for decertification after discovery is complete. *Mooney*, 54 F.3d at 1214 ("The second determination is typically precipitated by a motion for 'decertification' by the defendant after discovery is largely complete and the matter is ready for trial"); *see also, e.g., Kenyata-Bean,* 2005 WL 3543793, at *6; *Lackey*, 2011 WL 6329909, at *3; *Smith*, 2009 WL 2046159, at *3; *Williams, et al. v. Bally's Louisiana, Inc.*, No. 05-5020, 2006 WL 1235904, at *2 (E.D. La. May 5, 2006); *Clarke v. Convergys Customer Mgmt Group, Inc.*, 370 F.Supp.2d 601, 604-05 (S.D. Tex. 2005). Allowing early notice and full participation by the opt in plaintiffs "assures that the full 'similarly situated' decision is informed, efficiently reached, and conclusive." *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 406-407 (D.N.J. 1988) *aff'd,* 493 U.S. 165 (1989). The "similarly situated" determination is more stringent at the merits stage, because once the notice and opt in period is complete, the court has the benefit of knowing the composition of the collective action. *Mooney*, 54 F.3d at 1214 ("At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question");

Here, consistent with applicable precedent, the two-stage *Lusardi* approach is the

appropriate course for Plaintiffs' FLSA claims. More stringent review of the "similarly situated" determination should not come at the notice stage, but only *after* the completion of discovery. Thus, in analyzing Plaintiffs' request for notice to potential members of the Collective, Plaintiffs respectfully submit that this Court adopt the two-stage *Lusardi* approach employed by the overwhelming majority of district courts in the Fifth Circuit.[3]

### C. Plaintiffs Satisfy The "Similarly Situated" Standard At The Conditional Certification Stage

As set forth above, in order to meet the lenient "similarly situated" standard at the notice stage, Plaintiffs need only introduce allegations in their pleadings and in the Declarations submitted herewith that they were subject to a single decision, policy, or plan. *See* Section III(B)(I), *supra*. Plaintiffs readily meet this threshold. *See* Section II, *supra*. As of this filing, eight of Defendants' current and former employees have already opted in to this collective action, which is strong evidence that other similarly situated persons will wish to join this case. Dkt. Nos. 1-2, 43, 44, 45, and 48. Moreover, the Declarations submitted herewith show that Defendants maintained common compensation policies and/or practices applicable to Plaintiffs and members of the Collective which violate the FLSA. Defendants' common policies and/or practices include, *inter alia*:

---

[3] The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee," and defines an employee as "any individual employed by an employer." 29 U.S.C. §§ 203(d), 203(e)(1). Under the FLSA, to "employ" means "to suffer or permit to work." 29 U.S.C. § 203(g); 29 C.F.R. 791.2. Indeed, "lower courts have found that the FLSA's definition of employer is so broad that the case may proceed even where there exist threshold questions regarding employment issues." *Lang*, 2011 WL 6934607, at *3 (citing *Fernandes da Silva*, 2009 WL 3565949; *Nobles v. State Farm Mutual Auto. Ins. Co.*, No. 10-CV-04175, 2011 WL 3794021 (W.D. Mo. Aug. 25, 2011)).

- Refusing to pay Plaintiffs and other similarly situated workers all of the wages and/or overtime compensation owed to them for all of the hours they worked.[4] 29 U.S.C. § 207.

- Automatically deducting the cost of required uniform shirts and nametags from Plaintiffs' wages.

- Failing to pay Plaintiffs the federally mandated minimum wage rate as a result of Defendants' unlawful deduction policies. 29 U.S.C. § 206.

- Failing to maintain proper timekeeping records.

In addition to these considerations, Plaintiffs and members of the Collective are low-wage earners who struggle to make a living and to support their families. They are precisely the type of workers that the FLSA's collective action mechanism was designed to protect. *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989) ("A collective action allows . . . [p]laintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged… activity").

Accordingly, based on the foregoing, the Court should grant Plaintiffs' request for conditional certification.

### D. Notice To Potential Members Of The Collective Is Appropriate And Necessary To Protect Their Rights

"The judicial system benefits by the efficient resolution in one proceeding of common

---

[4] The FLSA provides a claim for the recovery of straight-time wages for weeks in which an employee works over 40 hours. 29 C.F.R. 778.315 ("Payment for all hours worked in overtime workweek is required" and "[t]his extra compensation for the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the non-overtime hours under his contract (express or implied) or under any applicable statute has been paid").

issues of law and fact arising from the same alleged…activity." *Hoffman-La Roche*, 493 U.S. at 170. For these benefits to be realized, however, persons who have been aggrieved by the unlawful conduct must be provided accurate and timely notice of the collective action so that they can make informed decisions about whether to participate. *Id.* Accordingly, the Court has broad discretion to allow Plaintiffs to notify putative members of the Collective that they may choose to opt in to a suit. *Id.* at 170-171.

Early distribution of the notice is essential in FLSA collective actions, because, unlike in class actions under Fed. R. Civ. P. 23, the statute of limitations on FLSA claims continues to run until potential plaintiffs affirmatively opt in to the action. *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916-917 (5th Cir. 2008); *Lima*, 493 F.Supp.2d at 798. Delaying notification will cause serious prejudice to potential members of the Collective, because "every day that passes is a day of damages each potential opt-in plaintiff will be unable to recover." *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 371 (S.D.N.Y. 2007). This consideration alone weighs heavily in favor of early notification. *Id.* ("Prompt court action is needed because potential opt-in plaintiffs' claims are in risk of being extinguished by the running of the statute of limitations").

The Declarations submitted herewith contain ample evidence that Plaintiffs are "similarly situated" and that Defendants have violated the FLSA. *See* Section II, *supra*. Given this evidence, notice to members of the Collective should be expedited, as delay threatens to destroy their ability to seek compensation for numerous hours of work for which they were not paid. To that end, Plaintiffs request that the Court approve the proposed notice and consent form submitted herewith for distribution to members of the Collective Class. *See* **Exhibit J**, Proposed Mailed Notice; **Exhibit K**, Proposed Opt In Consent Form.

### 1. Plaintiffs' proposed notice procedure is supported by applicable case law

In order to facilitate notice to potential members of the Collective, Plaintiffs respectfully request that the Court require Defendants to produce, within 14 days, a computer-readable database that includes the names of all potential members of the Collective, along with their last known mailing address, email address, telephone number, and social security number. Based on this contact information, a third-party claims administrator will mail the Court-approved notice and consent form (written in both English and Spanish) to potential class members. *See* **Exhibit J,** Proposed Mailed Notice; **Exhibit K**, Proposed Opt In Consent Form.

In the interest of time and efficiency, Plaintiffs propose that potential members of the Collective be required to return their signed consent forms to Plaintiffs' counsel within 90 days (received or postmarked) after the date on which the notice and consent forms are mailed. Plaintiffs' counsel will file the consent forms with the Court on an ongoing basis and no later than two weeks after the end of this 90-day notice period. Similar notice plans have been approved by district courts in the Fifth Circuit. *See, e.g., Williams v. Bally's Louisiana, Inc.*, No. 05-5020, 2006 WL 1235904, at *3 (E.D. La. May 5, 2006) (180-day opt in period from order granting notice, with two weeks for the defendant to disclose names and addresses); *Recinos-Recinos v. Express Forestry, Inc.*, 233 F.R.D. 472, 482-483 (E.D. La. 2006) (180-day opt in period from order granting notice, with 26 days for the defendant to provide names and addresses); *Johnson v. American Airlines, Inc.*, 531 F.Supp. 957, 961 (N.D. Tex. 1982) (finding direct mail and posting on company bulletin boards was reasonable notice).

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court conditionally certify the Collective under the Section 216(b) of the FLSA and authorize notice to allow potential members of the Collective to opt in to preserve their rights.

DATE: February 11, 2014                Respectfully submitted,

 /s/ Peter B. Schneider
Peter B. Schneider (*pro hac vice*)
Carolyn H. Cottrell (*pro hac vice* pending)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
pschneider@schneiderwallace.com
ccottrell@schneiderwallace.com

Jody Forester Jackson, (La. Bar No. 28938)
Mary Bubbett Jackson, (La. Bar No. 29110)
**JACKSON+JACKSON**
201 St. Charles Avenue, Suite 2500
New Orleans, Louisiana 70170
Telephone: (504) 599-5953
Facsimile:  (888) 988-6499
jjackson@jackson-law.net
mjackson@jackson-law.net

Joseph C. Peiffer, Esq.
David M. Abdullah, Esq.
Daniel J. Carr, Esq.
PEIFFER ROSCA ABDULLAH & CARR, LLC
201 St. Charles Avenue, Suite 4610
New Orleans, Louisiana 70170
Telephone: (504) 523-2434
Facsimile: (504) 523-2464
jpeiffer@praclawfirm.com
dabdullah@praclawfirm.com
dcarr@praclawfirm.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2014, I electronically filed the foregoing pleading with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

    /s/ Peter B. Schneider
Peter B. Schneider (*pro hac vice*)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, California  94104
Telephone:  (415) 421-7100
Facsimile:  (415) 421-7105
pschneider@schneiderwallace.com

*Attorney for Plaintiffs*