# EXHIBIT  A

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DANIA GISSELL CRUZ MEJIA, MARIA ELISA BUESO MEJIA, MARTHA L. MARTINEZ BALLEZA, ESTHER SANCHEZ TORRES, CLAUDIA WILSON, DORA PIMEDA, individually and on behalf of all persons similarly situated, | )<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | )<br>) |
| BROTHERS PETROLEUM, LLC D/B/A BROTHERS FOOD MART, BROTHERS FOOD MART AND  IMAD FAIEZ HAMDEN | )<br>)<br>)<br>) |
| Defendants. | |

CIVIL ACTION NO.: **12-2842**

SECTION: **C(3)**

**DECLARATION OF MARIA ELISA BUESO MEJIA  IN SUPPORT OF PLAINTIFFS' MOTION TO PROCEED AS A COLLECTIVE ACTION AND FACILITATE NOTICE UNDER 29 U.S.C. § 216 (b)**

District Judge Helen G. Berrigan

**JURY TRIAL DEMANDED**

## DECLARATION OF MARIA ELISA BUESO MEJIA IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION PURSUANT TO 29 U.S.C. § 216(b)

I, Maria Elisa Bueso Mejia hereby declare:

1.      My name is Maria Elisa Bueso Mejia.  I am an opt-in Plaintiff in the above-captioned matter.  I have personal knowledge of the facts stated in this declaration, and, if called upon to do so, I could and would testify to these facts.

2.      I worked for Defendants, doing business as Brothers Food Mart, at their 1700 Barataria Boulevard; 9000 Westbank Expressway; 801 Burman Highway; 1600 Manhattan; 123 Terry Parkway; and Avondale, Louisiana locations from June 2006 to August 2012.  I was employed as a cook and store operator.

3.      While working as a cook and store operator for Brothers Food Mart, I was generally required to work 72 hours per week.  On a typical day, I started work at 6:00 A.M., and I finished performing my job duties as a cook and store operator at 6:00 P.M.  I worked 6 days per week.  I routinely worked over 40 hours per week.

4.      My job duties as a cook and store operator included: filling orders in the kitchen; cooking; cleaning; restocking shelves and the kitchen; transporting store supplies.

5.      With respect to compensation, I received approximately $9.00 per hour.

### Off-the-Clock Work

6.      Brothers Food Mart required me to transport supplies and products such as cigarettes, flour, chicken, French bread, tomatoes, oil, lettuce, groceries between stores and travel to and from Defendants' main office in my own personal vehicle. I did this approximately four times per month before, after and/or during my shifts. On average, I spent one hour and thirty minutes each trip transporting supplies. I was also required to provide transportation to work for other employees approximately 8 times per month. I spent one hour transporting other employees. Brothers Food Mart did not pay me for this time. Brothers Food Mart did not reimburse me for mileage or other expenses for performing these tasks.

### Deductions From Wages

7.  While performing my job duties, Brothers Food Mart required me to wear a uniform shirt consisting of either red collared polo shirts or gray t-shirts with a chicken and Brothers logo in red and yellow and a nametag. I had 4 red and 11 gray shirts, the cost of which were deducted from my wages at a rate of $15.00 for red polo shirts and $8.00 for gray t-shirts. Brothers Food Mart also deducted the cost of my nametag from my wages at a rate of $3.00 each. I also bought 2 sweatshirts that were red with the Brothers logo. $20 for each sweatshirt was deducted from my wages. The cost of these uniform items was either deducted from my pay or else Brothers brought me the uniform pieces and I had to pay cash for them. In addition I was required to purchase red or black hats from Wal-mart as part of my uniform at a cost of $5.00 each.

## **Time Keeping**

8.      Brothers Food Mart did not keep accurate records of the time that I worked.  I was paid entirely in cash in amounts that neither reflected the hours I worked nor any overtime compensation.

9.      Based on my experience working for Brothers Food Mart and my personal observations, I am aware that many other Brothers Food Mart employees were subjected to the same policies and practices described above.  In other words, the policies and practices described above were applied generally to all Brothers Food Mart workers.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and is based upon my personal knowledge.

Executed this 21st day of January, 2014 at New Orleans, Louisiana.


_____
Maria Elisa Bueso Mejia

# EXHIBIT  B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DANIA GISSELL CRUZ MEJIA, MARIA ELISA BUESO MEJIA, MARTHA L. MARTINEZ BALLEZA, ESTHER SANCHEZ TORRES, CLAUDIA WILSON, DORA PIMEDA, individually and on behalf of all persons similarly situated,

       Plaintiffs,

       vs.

BROTHERS PETROLEUM, LLC D/B/A BROTHERS FOOD MART, BROTHERS FOOD MART AND IMAD FAIEZ HAMDEN

       Defendants.

CIVIL ACTION NO.: **12-2842**

SECTION: **C(3)**

**DECLARATION OF ESTHER SANCHEZ TORRES IN SUPPORT OF PLAINTIFFS' MOTION TO PROCEED AS A COLLECTIVE ACTION AND FACILITATE NOTICE UNDER 29 U.S.C. § 216 (b)**

District Judge Helen G. Berrigan

**JURY TRIAL DEMANDED**

---

**DECLARATION OF ESTHER SANCHEZ TORRES IN IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION PURSUANT TO 29 U.S.C. § 216(b)**

I, Esther Sanchez Torres hereby declare:

1.    My name is Esther Sanchez Torres. I am an opt-in Plaintiff in the above-captioned matter. I have personal knowledge of the facts stated in this declaration, and, if called upon to do so, I could and would testify to these facts.

2.    I worked for Defendants, doing business as Brothers Food Mart, in their LaPalco and Avondale, Louisiana locations from February 2010 to July 2011 and February 2012 to July 2012. I was employed as a cook and store operator.

3.    While working as a cook and store operator for Brothers Food Mart, I was generally required to work 72 hours per week. On a typical day, I started work at 9:00 A.M.,

and I finished performing my job duties as a cook and store operator at 9:00 P.M. I worked 6 days per week. I routinely worked over 40 hours per week.

4.      My job duties as a cook and cashier included: filling orders in kitchen; cooking; cleaning; restocking shelves and the kitchen; and transporting store supplies.

5.      With respect to compensation, I received approximately $8.00 per hour.

### Off-the-Clock Work

6.       Brothers Food Mart required me to transport supplies and products such as cigarettes and French bread between stores and travel to and from Defendants' main office in my own personal vehicle. I did this approximately two times per month before, after and/or during my shifts. On average, I spent one hour to an hour and a half each trip transporting supplies. I was also required to provide transportation to work for other employees approximately 1 time per month. I spent one hour transporting other employees. Brothers Food Mart did not pay me for this time. Brothers Food Mart did not reimburse me for mileage or other expenses performing these tasks.

### Deductions From Wages

7.      While performing my job duties, Brothers Food Mart required me to wear a uniform shirt consisting of red collared polo shirts or gray t-shirts with a chicken and Brothers logo in red and yellow and a nametag. I had 4 red and 5 gray shirts, the cost of which were deducted from my wages at a rate of $15.00 for red polo shirts and $8.00 for gray t-shirts. Brothers Food Mart also deducted the cost of my nametag from my wages at a rate of $3.00. The cost of this uniform was either deducted from my pay or Brothers brought me the uniform pieces and made me pay cash for them. I was also required to buy red or black hats from Wal-mart as part of my uniform at a cost of $5.00 each.

## **Time Keeping**

8.      Brothers Food Mart did not keep accurate records of the time that I worked.  I was paid entirely in cash in amounts that neither reflected the hours I worked nor any overtime compensation.

9.      Based on my experience working for Brothers Food Mart and my personal observations, I am aware that many other Brothers Food Mart employees were subjected to the same policies and practices described above.  In other words, the policies and practices described above were applied generally to all Brothers Food Mart workers.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and is based upon my personal knowledge.

Executed this 21st day of January, 2014 at New Orleans, Louisiana.


Esther Sanchez Torres

**EXHIBIT  C**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DANIA GISSELL CRUZ MEJIA, MARIA ELISA BUESO MEJIA, MARTHA L. MARTINEZ BALLEZA, ESTHER SANCHEZ TORRES, CLAUDIA WILSON, DORA PIMEDA, individually and on behalf of all persons similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> BROTHERS PETROLEUM, LLC D/B/A BROTHERS FOOD MART, BROTHERS FOOD MART AND IMAD FAIEZ HAMDEN <br><br> Defendants. | CIVIL ACTION NO.: **12-2842** <br><br> SECTION: **C(3)** <br><br> **DECLARATION OF DANIA GISSELL CRUZ MEJIA IN SUPPORT OF PLAINTIFFS' MOTION TO PROCEED AS A COLLECTIVE ACTION AND FACILITATE NOTICE UNDER 29 U.S.C. § 216 (b)** <br><br> District Judge Helen G. Berrigan <br><br> **JURY TRIAL DEMANDED** |

## DECLARATION OF DANIA GISSELL CRUZ MEJIA IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION PURSUANT TO 29 U.S.C. § 216(b)

I, Dania Gissell Cruz Mejia hereby declare:

1.       My name is Dania Gissell Cruz Mejia. I am an opt-in Plaintiff in the above-captioned matter. I have personal knowledge of the facts stated in this declaration, and, if called upon to do so, I could and would testify to these facts.

2.       I worked for Defendants, doing business as Brothers Food Mart, at their 1700 Barataria; 9000 Westbank Expressway; 801 Burman Highway; 1600 Manhattan; and Avondale, Louisiana locations from July 2007 to July 2012. I was employed as a cook and store operator.

3.       While working as a cook and store operator for Brothers Food Mart, I was generally required to work 72 hours per week. On a typical day, I started work at 6:00 A.M., and I finished performing my job duties as a cook and store operator at 6:00 P.M. I worked 6 days per week. I routinely worked over 40 hours per week.

4.      My job duties as a cook and store operator included:  filling orders in kitchen; cooking; cleaning; restocking shelves and in the kitchen; and transporting store supplies.

5.      With respect to compensation, I received approximately $9.00 per hour.

## Off-the-Clock Work

6.      Brothers Food Mart required me to transport supplies and products such as cigarettes, flour, chicken, French bread, tomatoes, oil, lettuce, groceries between stores and travel to and from Defendants' main office in my own personal vehicle.   I did this approximately two times per month, and did it before, after and/or during my shifts.   On average, I spent an hour to an hour and a half each trip transporting supplies.   I was also required to provide transportation to work for other employees approximately 3 times per week.  I spent one hour transporting other employees.  Brothers Food Mart did not pay me for this time.  Brothers Food Mart did not reimburse me for mileage or other expenses performing these tasks.

## Deductions From Wages

7.      While performing my job duties, Brothers Food Mart required me to wear a uniform shirt of either red collared polo shirts or gray t-shirts with a chicken and Brothers logo in red and yellow and a nametag.  I had 6 red and 9 gray shirts, the cost of which were deducted from my wages at a rate of $15.00 for red polo shirts and $8.00 for gray t-shirts. Brothers Food Mart also deducted the $3.00 cost of my nametag from my wages. I was also charged for 2 sweatshirts that were red with the Brothers logo.  $20 for each sweatshirt was deducted from my wages.   The cost of this uniform was either deducted from my pay or Brothers brought me the uniform pieces and made me pay for them in cash.  In addition, I was required to purchase either a red or black hat from Wal-mart for work at a cost of $5.00.

## **Time Keeping**

8.      Brothers Food Mart did not keep accurate records of the time that I worked.  I was paid entirely in cash in amounts that neither reflected the hours I worked nor any overtime compensation.

9.      Based on my experience working for Brothers Food Mart and my personal observations, I am aware that many other Brothers Food Mart employees were subjected to the same policies and practices described above.   In other words, the policies and practices described above were applied generally to all Brothers Food Mart workers.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and is based upon my personal knowledge.

Executed this 21st day of January, 2014 at New Orleans, Louisiana.


_Dania Cruz_
Dania Gissell Cruz Mejia

# EXHIBIT  D

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

DANIA GISSELL CRUZ MEJIA, MARIA
ELISA BUESO MEJIA, MARTHA L.
MARTINEZ BALLEZA, ESTHER
SANCHEZ TORRES, CLAUDIA WILSON,
DORA PIMEDA, individually and on behalf
of all persons similarly situated,

   Plaintiffs,

  vs.

BROTHERS PETROLEUM, LLC D/B/A
BROTHERS FOOD MART, BROTHERS
FOOD MART AND  IMAD FAIEZ
HAMDEN

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO.: **12-2842**

SECTION: **C(3)**

**DECLARATION OF MELVIN
MEDRANO IN SUPPORT OF
PLAINTIFFS' MOTION TO PROCEED
AS A COLLECTIVE ACTION AND
FACILITATE NOTICE UNDER 29 U.S.C.
§ 216 (b)**

District Judge Helen G. Berrigan

**JURY TRIAL DEMANDED**

## DECLARATION OF MELVIN MEDRANO IN SUPPORT OF PLAINTIFFS' MOTION
## FOR CONDITIONAL CERTIFICATION PURSUANT TO 29 U.S.C. § 216(b)

  I, Melvin Medrano hereby declare:

  1. My name is Melvin Medrano.  I am an opt-in Plaintiff in the above-captioned

matter.  I have personal knowledge of the facts stated in this declaration, and, if called upon to

do so, I could and would testify to these facts.

  2. I worked for Defendants, doing business as Brothers Food Mart at their Stumpf

Boulevard and Manhattan Boulevard locations from November 2011 to April 2012.  I was

employed as a cashier, cook and store operator.

  3. While working as a cook, cashier and store operator for Brothers Food Mart, I

was generally required to work 72 hours per week.  On a typical day, I started work at 9:00

A.M., and I finished performing my job duties as a cook and store operator at 9:00 P.M.  I

worked 6 days per week.  I routinely worked over 40 hours per week.

4.      My job duties as a cashier, cook and store operator included: ran cash register and did bank runs; filling orders in the kitchen; cleaning; restocking shelves and the kitchen and behind the register; transporting store supplies.

5.      With respect to compensation, I received approximately $8.00 per hour.

### Off-the-Clock Work

6.      Brothers Food Mart required me to transport supplies and products such as cigarettes, flour, chicken, French bread, tomatoes, oil, lettuce, groceries and/or liquor between stores and travel to and from Defendants' main office in my own personal vehicle.  I did this approximately one time per week after and/or during my shifts. On average, I spent one hour and thirty minutes each trip transporting supplies. I was also required to provide transportation to work for other employees approximately 3 times per week. I spent one hour transporting other employees. Brothers Food Mart did not pay me for this time. Brothers Food Mart did not reimburse me for mileage or other expenses for performing these tasks.

### Deductions From Wages

7.   While performing my job duties, Brothers Food Mart required me to wear a uniform shirt consisting of either red collared polo shirts or gray t-shirts with a chicken and Brothers logo in red and yellow and a nametag.  I had 4 red and 4 gray shirts, the cost of which were deducted from my wages at a rate of $15.00 for red polo shirts and $8.00 for gray t-shirts. Brothers Food Mart also deducted the cost of my nametag from my wages at a rate of $5.00 each.  I also bought 1 sweatshirt that were red with the Brothers logo.  $20 for each sweatshirt was deducted from my wages.  The cost of these uniform items was either deducted from my pay or else Brothers brought me the uniform pieces and I had to pay cash for them.  In addition

### Time Keeping

8.      Brothers Food Mart did not keep accurate records of the time that I worked.  I was paid entirely in cash in amounts that neither reflected the hours I worked nor any overtime compensation.

9.      Based on my experience working for Brothers Food Mart and my personal observations, I am aware that many other Brothers Food Mart employees were subjected to the same policies and practices described above.  In other words, the policies and practices described above were applied generally to all Brothers Food Mart workers.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and is based upon my personal knowledge.

Executed this 23rd day of January, 2014 at New Orleans, Louisiana.

Melvin Medrano

**EXHIBIT  E**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| DANIA GISSELL CRUZ MEJIA, MARIA ELISA BUESO MEJIA, MARTHA L. MARTINEZ BALLEZA, ESTHER SANCHEZ TORRES, CLAUDIA WILSON, DORA PIMEDA, individually and on behalf of all persons similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> BROTHERS PETROLEUM, LLC D/B/A BROTHERS FOOD MART, BROTHERS FOOD MART AND IMAD FAIEZ HAMDEN <br><br> _____ Defendants. | CIVIL ACTION NO.: **12-2842** <br><br> SECTION: **C(3)** <br><br> **DECLARATION OF MARTHA L. MARTINEZ BALLEZA IN SUPPORT OF PLAINTIFFS' MOTION TO PROCEED AS A COLLECTIVE ACTION AND FACILITATE NOTICE UNDER 29 U.S.C. § 216 (b)** <br><br> District Judge Helen G. Berrigan <br><br> **JURY TRIAL DEMANDED** |

**DECLARATION OF MARTHA L. MARTINEZ BELLEZA IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR CONDITIONAL CERTIFICATION PURSUANT TO 29 U.S.C. § 216(b)**

I, Martha L. Martinez Balleza hereby declare:

1.      My name is Martha L. Martinez Balleza.  I am an opt-in Plaintiff in the above-captioned matter.  I have personal knowledge of the facts stated in this declaration, and, if called upon to do so, I could and would testify to these facts.

2.      I worked for Defendants, doing business as Brothers Food Mart, primarily in the 2698 Baratarria Boulevard, Louisiana location from August 2004 to August 2012.  I was employed as a cashier, cook and store operator.

3.      While working as a cashier, cook and store operator for Brothers Food Mart, I was generally required to work 80 hours per week. On a typical day, I started work at 9:00 A.M., and I finished performing my job duties as a cashier, cook and store operator at 9:00 P.M, but I often worked later than 9:00 P.M. I worked 6-7 days per week. I routinely worked over 40 hours per week.

4.      My job duties as a cashier, cook and store operator included: operating the cash register and bank runs; filling orders in kitchen; cooking; cleaning; restocking shelves in the kitchen and behind the register; and transporting store supplies.

5.      With respect to compensation, I received approximately $10.00 per hour.

### Off-the-Clock Work

6.      Brothers Food Mart required me to transport supplies and products such as cigarettes, flour, chicken, French bread, tomato, oil, lettuce, groceries, and liquor between stores and travel to and from Defendants' main office in my own personal vehicle.   I did this approximately 3 times per week before, after and/or during shifts.  On average, I spent one hour each trip transporting supplies. I was also required to provide transportation to work for other employees approximately 6 times per month.   I spent one hour transporting other employees. Brothers Food Mart did not pay me for this time.  Brothers Food Mart did not reimburse me for mileage or other expenses performing these tasks.

### Deductions From Wages

7.   While performing my job duties, Brothers Food Mart required me to wear a uniform shirt consisting of a red, black, white or yellow collared polo shirt or a gray t-shirt with a chicken and Brothers logo in red and yellow and a nametag. I had 10 red, 2 black, 2 white and 1 yellow polo shirts and 7 gray shirts, the cost of which were deducted from my wages at rate of $15.00 for polo shirts and $8.00 for t-shirts. Brothers Food Mart also deducted the cost of my 6 nametags from my wages at $3.00 each. I also had 2 sweatshirts that were red with the Brothers logo. $20 for each sweatshirt was deducted from my wages. The cost of these uniforms was either deducted from my wages or Brothers brought me these uniform pieces and I had to pay cash for them. I was also required to purchase red or black hats as part of my uniform at a cost of $5 each.

## **Time Keeping**

8.      Brothers Food Mart did not keep accurate records of the time that I worked.  I was paid entirely in cash in amounts that neither reflected the hours I worked nor any overtime compensation.

9.      Based on my experience working for Brothers Food Mart and my personal observations, I am aware that many other Brothers Food Mart employees were subjected to the same policies and practices described above.  In other words, the policies and practices described above were applied generally to all Brothers Food Mart workers.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and is based upon my personal knowledge.

Executed this 21st day of January, 2014 at New Orleans, Louisiana.

Martha L Martinez Balleza

**EXHIBIT  F**

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DANIA GISSELL CRUZ MEJIA, MARIA ELISA BUESO MEJIA, MARTHA L. MARTINEZ BALLEZA, ESTHER SANCHEZ TORRES, CLAUDIA WILSON, DORA PIMEDA, individually and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BROTHERS PETROLEUM, LLC D/B/A BROTHERS FOOD MART, BROTHERS FOOD MART AND  IMAD FAIEZ HAMDEN<br><br>Defendants. | CIVIL ACTION NO.: **12-2842**<br><br>SECTION: **C(3)**<br><br>**DECLARATION OF JOSE JOVEL IN SUPPORT OF PLAINTIFFS' MOTION TO PROCEED AS A COLLECTIVE ACTION AND FACILITATE NOTICE UNDER 29 U.S.C. § 216 (b)**<br><br>District Judge Helen G. Berrigan<br><br>**JURY TRIAL DEMANDED** |

### DECLARATION OF JOSE JOVEL IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION PURSUANT TO 29 U.S.C. § 216(b)

I, Jose Jovel, hereby declare:

1.      My name is Jose Jovel. I am an opt-in Plaintiff in the above-captioned matter. I have personal knowledge of the facts stated in this declaration, and, if called upon to do so, I could and would testify to these facts.

2.      I worked for Defendants, doing business as Brothers Food Mart, primarily at their 123 Terry Parkway locations from 2005 to December 2013. I was employed as a store operator.

3.      While working as a store operator for Brothers Food Mart, I was generally required to work 72 hours per week. On a typical day, I started work at 9:00 A.M., and I finished performing my job duties as a cook and store operator at 9:00 P.M. I worked 6 days per week. I routinely worked over 40 hours per week.

4.      My job duties as a store operator included:  filling orders in kitchen; cleaning; restocking shelves in the office; transporting store supplies; gardening; and maintenance.

5.      With respect to compensation, I received approximately $7.25 to $8.50 per hour.

### Off-the-Clock Work

6.      Brothers Food Mart required me to transport supplies and products such as cigarettes, flour, chicken, French bread, tomatoes, oil, lettuce, groceries and/or liquor between stores and travel to and from Defendants' main office in my own personal vehicle.  I did this approximately one time a week, and did it after and/or during my shifts.  On average, I spent an hour to an hour and a half each trip transporting supplies.  I was also required to provide transportation to work for other employees approximately 1 time per month.  I spent one hour transporting other employees.  Brothers Food Mart did not pay me for this time.  Brothers Food Mart did not reimburse me for mileage or other expenses performing these tasks.

### Deductions From Wages

7.      While performing my job duties, Brothers Food Mart required me to wear a uniform shirt of either red collared polo shirts or gray t-shirts with a chicken and Brothers logo in red and yellow and a nametag.  I had 4 red and 4 gray shirts, the cost of which were deducted from my wages at a rate of $15.00 for red polo shirts and $8.00 for gray t-shirts. Brothers Food Mart also deducted the $5.00 cost of my nametag from my wages. I was also charged for 2 sweatshirts that were red with the Brothers logo.  $20 for each sweatshirt was deducted from my wages.   The cost of this uniform was either deducted from my pay or Brothers brought me the uniform pieces and made me pay for them in cash.

## **Time Keeping**

8.     Brothers Food Mart did not keep accurate records of the time that I worked. I was paid entirely in cash in amounts that neither reflected the hours I worked nor any overtime compensation.

9.     Based on my experience working for Brothers Food Mart and my personal observations, I am aware that many other Brothers Food Mart employees were subjected to the same policies and practices described above. In other words, the policies and practices described above were applied generally to all Brothers Food Mart workers.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and is based upon my personal knowledge.

Executed this 23rd day of January, 2014 at New Orleans, Louisiana.

Jose Jovel

# EXHIBIT  G

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

DANIA GISSELL CRUZ MEJIA, MARIA
ELISA BUESO MEJIA, MARTHA L.
MARTINEZ BALLEZA, ESTHER
SANCHEZ TORRES, CLAUDIA WILSON,
DORA PIMEDA, individually and on behalf
of all persons similarly situated,

      Plaintiffs,

      vs.

BROTHERS PETROLEUM, LLC D/B/A
BROTHERS FOOD MART, BROTHERS
FOOD MART AND IMAD FAIEZ
HAMDEN

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO.: **12-2842**

SECTION: **C(3)**

**DECLARATION OF DORA PINEDA IN
SUPPORT OF PLAINTIFFS' MOTION TO
PROCEED AS A COLLECTIVE ACTION
AND FACILITATE NOTICE UNDER 29
U.S.C. § 216 (b)**

District Judge Helen G. Berrigan

**JURY TRIAL DEMANDED**

## DECLARATION OF DORA PINEDA IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION PURSUANT TO 29 U.S.C. § 216(b)

I, Dora Pineda, hereby declare:

1.    My name is Dora Pineda. I am an opt-in Plaintiff in the above-captioned

matter. I have personal knowledge of the facts stated in this declaration, and, if called upon to

do so, I could and would testify to these facts.

2.    I worked for Defendants, doing business as, Brothers Food Mart, in Metairie,

Louisiana, from May 2012 to December 2012. I was employed as a store operator and cook.

3.    While working as a store operator and cook for Brothers Food Mart, I was

generally required to work 60-80 hours per week. On a typical day, I started work at 9:00

A.M., and I finished performing my job duties as a store operator and cook at 9:00 P.M. I

worked five to six days per week.  I routinely worked over 40 hours per week, but I was not paid overtime.

4.     My job duties as a store operator and cook, include:

    a.  Cooking and preparing chicken, fries, jambalaya;

    b.  Helping customers;

    c.  Stocking the store;

    d.  Doing inventory of the store;

    e.  Restocking the kitchen;

    f.   Cleaning and mopping the store, kitchen, and bathrooms;

    g.  Taking out cooking oil and trash.

5.     With respect to compensation, I received approximately $7.50 per hour. Although I worked more than 40 hours in a workweek, my paycheck did not reflect the hours I worked over 40.

**Deductions From Wages**

6.     While performing my job duties, Brothers Food Mart required me to wear a uniform shirt which was gray and had the Brothers logo on it.  I was provided with two shirts and was told I would need to purchase all additional shirts for $8 - $10 dollars each.

**Time Keeping**

7.     Brothers Food Mart did not keep accurate records of the time that I worked. Although I received a paycheck and paystub every week, it only reflected that I worked 40 hours in a work week.  I actually worked 60 – 80 hours per week, but my pay stub did not reflect any overtime.   Occasionally, I was given cash at my regular rate of pay for some of the hours I worked over 40, but that did not accurately reflect the actual hours that I worked.

8.      Based on my experience working for Brothers Food Mart and my personal observations, I am aware that many other Brothers Food Mart employees were subjected to the same policies and practices described above.  In other words, the policies and practices described above were applied generally to all Brothers Food Mart workers.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and is based upon my personal knowledge.

Executed this __31__ day of January, 2014, at _____henner_____ , Louisiana.

_____
DORA PINEDA

# EXHIBIT  H

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

DANIA GISSELL CRUZ MEJIA, MARIA ELISA BUESO MEJIA, MARTHA L. MARTINEZ BALLEZA, ESTHER SANCHEZ TORRES, CLAUDIA WILSON, DORA PIMEDA, individually and on behalf of all persons similarly situated,

        Plaintiffs,

        vs.

BROTHERS PETROLEUM, LLC D/B/A BROTHERS FOOD MART, BROTHERS FOOD MART AND IMAD FAIEZ HAMDEN

        Defendants.

CIVIL ACTION NO.: **12-2842**

SECTION: **C(3)**

**DECLARATION OF CLAUDIA WILSON IN SUPPORT OF PLAINTIFFS' MOTION TO PROCEED AS A COLLECTIVE ACTION AND FACILITATE NOTICE UNDER 29 U.S.C. § 216 (b)**

District Judge Helen G. Berrigan

**JURY TRIAL DEMANDED**

## DECLARATION OF CLAUDIA WILSON IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION PURSUANT TO 29 U.S.C. § 216(b)

I, Claudia Wilson, hereby declare:

1.     My name is Claudia Wilson. I am an opt-in Plaintiff in the above-captioned matter. I have personal knowledge of the facts stated in this declaration, and, if called upon to do so, I could and would testify to these facts.

2.     I worked for Defendants, doing business as, Brothers Food Mart, in Metairie, Louisiana from approximately Spring 2012 until Fall 2013. I was employed as a store operator, cashier, and cook.

3.     While working as a store operator, cashier, and cook for Brothers Food Mart, I was generally required to work a minimum of 72 hours per week. On a typical day, I started

work at 9:00 A.M., and I finished performing my job duties as a store operator, cashier, and cook at 9:00 P.M. I worked 6 to 7 days per week. I routinely worked over 40 hours per week.

4.      My job duties as a store operator, cashier, and cook, include:

    a.  Cooking and preparing chicken, fries, jambalaya;

    b.  Helping customers;

    c.  Stocking the store;

    d.  Doing inventory of the store;

    e.  Restocking the kitchen and coolers;

    f.  Cleaning and mopping the store, kitchen, and bathrooms;

    g.  Taking out cooking oil and trash;

    h.  Working as cashier.

5.      With respect to compensation, I received approximately $8.00 - $8.25 per hour. I did not receive overtime compensation when I worked more than 40 hours in a workweek.

## Deductions From Wages

6.      While performing my job duties, Brothers Food Mart required me to wear a uniform shirt which was gray and had the Brothers logo on it.   I was provided with one shirt and was told I would need to purchase all additional shirts.  I purchased approximately 12 shirts, the cost of which were deducted from my wages.  Each shirt cost between $13 and $15.

## Time Keeping

7.      Brothers Food Mart did not keep accurate records of the time that I worked. Although I received a paycheck and paystub every week, it only reflected that I worked 40 hours in a work week.  I actually worked a minimum of 72 hours per week, but my pay stub did not reflect any overtime.  Occasionally, I was given cash at my regular rate of pay for

1

some of the hours I worked over 40 but that did not accurately reflect the actual hours that I worked.

8.     Based on my experience working for Brothers Food Mart and my personal observations, I am aware that many other Brothers Food Mart employees were subjected to the same policies and practices described above.  In other words, the policies and practices described above were applied generally to all Brothers Food Mart workers.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and is based upon my personal knowledge.

Executed this 2̲9̲ day of January, 2014, at _m̲e̲t̲c̲a̲r̲i̲e̲_, Louisiana.


_____
CLAUDIA WILSON

2

# EXHIBIT  I

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ISIDRO BARICUATRO, ET AL | CIVIL ACTION |
| VERSUS | NO.  11-2777 |
| INDUSTRIAL PERSONNEL AND MANAGEMENT SERVICES, INC., ET AL | SECTION "N"  (2) |

## ORDER AND REASONS

Before the Court is the "Plaintiffs' Motion to Proceed as a Collective Action and
Facilitate Notice under 19 U.S.C. § 216(b)" (Rec. Doc. 136).  The defendants have filed
opposition memoranda.  *See* Rec. Docs. 186, 188; *see also* Rec. Docs. 189 and 208 (adopting
opposition memoranda filed by co-defendants).  Plaintiffs have filed reply memoranda.  *See* Rec.
Docs. 204, 206.

## I. BACKGROUND:

The plaintiffs are Filipino workers (including welders and pipe fitters) who allege that
they were fraudulently recruited in the Philippines, given E-2 or B-1/OCS visas, and then
brought to Louisiana, where they were exploited in the oil and gas industry and housed in
deplorable conditions.   The plaintiffs allege that the defendants:   (1) subjected them to forced
labor in violation of the Trafficking Victims Protection Act of 2003 (18 U.S.C. §§ 1589-90); (2)
violated the Racketeer Influenced and Corrupt Organization Act ("RICO") (18 U.S.C. §§ 1961-
68); (3) violated the plaintiffs' civil rights (42 U.S.C. § 1981); (4) violated the Fair Labor
Standards Act ("FLSA") (19 U.S.C. §§ 203(m), 206 & 207); (5) violated the Klu Klux Klan Act

of 1871 (42 U.S.C. § 1985) and the Thirteenth Amendment; (6) committed the torts of fraud,

negligent misrepresentation, false imprisonment, and intentional and negligent infliction of

emotional distress under Louisiana law; and (7) breached contracts and/or covenants of good

faith and fair dealing.  *See* Rec. Doc. 172.  The plaintiffs also assert these claims on behalf of

others similarly situated, as a putative class action under FRCP 23 and a putative collective

action under the FLSA.   At issue in the instant motion is whether to conditionally certify the

matter to proceed as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b) and issue

court-approved notice.

## II.  LAW AND ANALYSIS:

### A.  Standard for Conditional § 216(b) Certification and Court-Approved Notice:

"The FLSA affords workers the right to sue collectively on behalf of themselves and

others 'similarly situated' for violations of the Act's minimum wage provisions and overtime

protections. 29 U.S.C. § 216(b)."  *Lima v. International Catastrophe Solutions, Inc.*, 493 F.

Supp. 2d 793, 797 (E.D. La. 2007) (Fallon, J.).  FLSA collective actions differ from Rule 23

class actions in that they require potential class members to affirmatively "opt-in" to the action,

rather than including the potential member automatically and then permitting them to expressly

opt out.  "District courts are provided with discretionary power to implement the collective

action procedure through the sending of notice to potential plaintiffs."  *Id.*

In determining whether a group of "similarly situated" employees exists such that notice

should be given, courts in this District follow the two-stage *Lusardi*[1] approach, which was

---

[1]  *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987).

2

detailed in *Mooney v. Aramco Services, Co.,* 54 F.3d 1207, 1213-14 (5th Cir.1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003):[2]

> Under *Lusardi*, the trial court approaches the "similarly situated" inquiry via a two-step analysis. The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision–- usually based only on the pleadings and any affidavits which have been submitted– whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard,[8] and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives– *i.e.* the original plaintiffs– proceed to trial on their individual claims. ...
>
> > [8] At the notice stage, "courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan ...."

*Mooney*, 54 F.3d at 1213-14 & n.8.

---

[2] *See, e.g., Lima,* 493 F.R.D. at 798 (Fallon, J.); *Lang v. DIRECTV, Inc.*, 2011 WL 6934607 *7 (E.D. La. 2011) (Brown, J., following Vance, J.); *Lackey v. SDT Waste & Debris Serv., LLC,* 2011 WL 6329909 *2 (E.D. La. 2011) (Milazzo, J.); *Smith v. Offshore Specialty Fabricators, Inc.*, 2009 WL 2046159 *2 (E.D. La. 2009) (Barbier, J.); *Fernandes Da Silva v. M2/Royal Constr. of La., LLC,* 2009 WL 3565949 *3 (E.D. La. 2009) (Lemmon, J.); *Melson v. Directech Southwest, Inc.*, 2008 WL 2598988 *3 (E.D. La. 2008) (Feldman, J.); *Williams v. Bally's Louisiana, Inc.*, 2006 WL 1285904 *2 (E.D. La. 2006) (Africk, J.).

"At the notice stage, the plaintiff bears the burden of making a preliminary factual showing that at least a few similarly situated individuals exist." *Lima*, 493 F.R.D. at 798. "The plaintiff may satisfy his or her burden through submission of evidence in the form of pleadings, affidavits and other supporting documentation." *Id.* "A plaintiff need only demonstrate a reasonable basis for the allegation that a class of similarly situated persons may exist." *Id.* (quotations and citations omitted).

**B. The Plaintiffs' Showing and the Defendants' Objections as to Certification:**

Here, the plaintiffs assert the following FLSA claims on behalf of themselves and other similarly situated employees:

(1) "Defendants Grand Isle and DNR (f/k/a D&R) violated 29 U.S.C. § 203(m) by deducting excessive and unreasonable costs for living expenses and for tools and equipment from Plaintiffs' wages. ... For example, Grand Isle, and DNR (f/k/a D&R) often deducted up to $2,000 to $3,500 per month from Plaintiffs' wages for living expenses, even though this exorbitant amount far exceeded the actual cost, or even the fair market value, of such expenses [and] also charged Plaintiffs for the cost of work-related tools and equipment, even though these Defendants ultimately retained, and clearly benefitted from, these work-related tools and equipment." *See* 2nd Amended Compl. (Rec. Doc. 172) at ¶¶ 97-98, 101-104, 111-115, 247.

(2) "Defendants Grand Isle and DNR (f/k/a D&R) violated 29 U.S.C. § 206 by deducting costs for living expenses and for tools and equipment from Plaintiffs' wages so as to cause Plaintiffs' wages to at times fall below the federally mandated minimum wage rate. *See id.* at ¶¶ 111-115, 248.

(3) "Defendants Grand Isle and DNR (f/k/a D&R) violated 29 U.S.C. § 207 by failing to compensate Plaintiffs for all hours worked, and by knowingly failing to compensate Plaintiffs at a rate of one and one-half times their regular hourly wage for hours worked in excess of 40 hours per week in violation of 29 U.S.C. § 207(a)(1). Defendants Grand Isle and DNR (f/k/a D&R), for example, did not compensate Plaintiffs for travel time (i.e., the time they were required to spend traveling to and from Defendants' job sites each day) even though Plaintiffs were required to perform certain work tasks before this travel time [and] did not

4

compensate Plaintiffs for any time spent donning, doffing, and cleaning required protective equipment and tools. *See id.* at ¶¶ 111-115, 249.

The plaintiffs have also submitted the declarations of twelve plaintiffs, each of whom attests to specific facts supporting each of the FLSA allegations above. *See* 136-3 (Exhibits A through L). Moreover, the declarants have averred that, based on their observations – including observations of co-workers' pay-stubs, their co-workers were treated in the same way.[3]

Given the plaintiffs' submissions and their light burden at the notice stage, the Court finds that the plaintiffs have demonstrated a reasonable basis for their assertion that similarly situated persons exist who may have similar FLSA claims against certain of the defendants. However, the Court finds merit in two of the defendants' objections, which warrant narrowing the plaintiffs' proposed definition of the collective.

First, the Court agrees with the defendants that the plaintiffs have failed to put forth any evidence or detailed allegations that would support a reasonable inference that similarly situated persons are or were employed by the defendants outside Louisiana. Thus, the collective will be limited to Louisiana. Second, the plaintiffs have failed to make even a slight showing indicating that there exists a class of similarly-situated potential opt-ins with FLSA claims against any of the following defendants: (1) Industrial Personnel and Management Services, Inc. ("IPAMS"); (2) Nilfil Peralta ("Peralta"); (3) Thunder Enterprises, Inc. ("Thunder"); (4) Mark Pregeant, Jr. ("Pregeant"); (4) Randolf Malagapo ("Malagapo"); (5) Danilo Dayao ("Dayao"); (6) V

---

[3] *See, e.g.*, Decl. of Alberto Arcilla (Rec. Doc. 136-3), Exh. A at ¶ 22.

5

Manpower Philippines, Inc., formerly known as V People Manpower Philippines, Inc. ("V People"); and (7) Pacific Ocean Manning, Inc. ("POMI").

Whether to keep employees of defendant DNR Offshore and Crewing Services, Inc. ("DNR") within the class definition is a closer call. In each of the twelve declarations, the declarant avers that he worked for Grand Isle Shipyard, Inc. ("Grand Isle") and D&R (presumably D&R Resources, LLC ("D&R")) in Galliano, Louisiana and/or Lafitte, Louisiana. *See* 136-3 (Exhibits A through L). None of the declarants mentions DNR. However, the plaintiffs assert in their Complaint that "Grand Isle and DNR (f/k/a D&R)" participated in the actions underlying each of the plaintiffs' FLSA claims. *See* 2nd Amended Compl. (Rec. Doc. 172) at ¶¶ 247-249. They further allege that D&R recently changed its name to DNR. *Id.* at ¶ 57. Although DNR claims in its opposition that it is not the successor to D&R, discovery has not yet been conducted. *See* Rec. Doc. 186 at 15 and Exhibit 8. Given the lenient standard for certification at this stage, the Court finds that the plaintiffs' allegations have established a sufficient basis for conditional certification of a class that includes current and former employees DNR, as well as those of Grand Isle and D&R. If it becomes evident through discovery that no claims lie against DNR, then it may bring a motion for de-certification at the appropriate time.[4]

---

[4] If DNR has evidence (beyond a self-serving affidavit) that it is not related to D&R, then it would be in the interest of all parties that DNR disclose such evidence to plaintiffs' counsel forthwith so that they may make an informed decision regarding whether to proceed with the collective action against DNR, so as to avoid unnecessary complication and/or confusion.

Accordingly, the Court conditionally certifies the following collective of similarly situated persons:  "All individuals who are currently employed or formerly have been employed by Grand Isle Shipyard, Inc., D&R Resources, LLC, or DNR Offshore and Crewing Services, Inc. in the State of Louisiana, under E-2 and/or B-1/OCS visas, since November 8, 2008."

Many of the defendants' remaining objections to certification have been resolved by this narrowing of the class definition.  To the extent they have not been resolved, the Court finds that they go to the merits and are not an appropriate basis for denying certification at this stage.  If they are borne out through discovery, then they may form the basis of a later motion for de-certification.

### C.  <u>Issues Relating to Notice</u>:

Because the Court has altered the definition of the collective proposed by the plaintiffs, the proposed notice plan must be modified, including all proposed notices and consent-to-sue forms.  Therefore, the defendants' objections to the proposed notice plan are denied without prejudice.   The Court expects counsel to work closely together in preparing a joint proposed notice plan, including details of when and where the notices shall be posted and/or broadcast. An objection to an opponent's proposal will not be well received unless it is supported by the overwhelming weight of authority and concerns a matter of substantial prejudice.  The proposed plan should also address the issue of whether notices written solely in English will be meaningful in light of allegations in the Second Amended Complaint that certain plaintiffs are unable to read English proficiently.  *See* Rec. Doc. 172 ¶86.

III.  <u>CONCLUSION</u>:

     Accordingly, for the foregoing reasons;

     **IT IS ORDERED** that the "Plaintiffs' Motion to Proceed as a Collective Action and

Facilitate Notice under 19 U.S.C. § 216(b)" (Rec. Doc. 136) is hereby **GRANTED IN PART**

and **DENIED IN PART**, as set forth herein**.**

     **IT IS FURTHER ORDERED** that the plaintiffs and defendants Grand Isle, D&R, and

DNR submit within seven (7) days a joint proposed notice plan, as described herein.

     New Orleans, Louisiana, this 9th day of November, 2012.

                            **KURT D. ENGELHARDT**
                            **UNITED STATES DISTRICT JUDGE**

# EXHIBIT  J

**NOTICE OF COLLECTIVE ACTION LAWSUIT**
***MEJIA, et al. v. BROTHERS PETROLEUM, LLC, et al.***
Civil Action No. 12-2842
United States District Court for the Eastern District of Louisiana

**TO:**   All individuals who are currently employed or formerly have been employed by Brothers Petroleum, LLC, doing business as Brothers Food Mart or Brothers Food Mart in the State of Louisiana, during the time period from November 28, 2009 to the present.

**RE:**   **FLSA lawsuit seeking alleged unpaid wages, overtime compensation, and reimbursement for unlawful deductions**



**PLEASE READ THIS NOTICE CAREFULLY. THIS NOTICE
COULD AFFECT YOUR LEGAL RIGHTS.**

## I. INTRODUCTION

The purpose of this Notice is to inform you of the existence of a collective action lawsuit in which the Court has conditionally determined that you are "similarly situated" to the named Plaintiffs, to advise you of how your rights may be affected by this suit, and to instruct you on the procedure for participating in this suit, should you choose to do so. YOU HAVE NOT JOINED THE LAWSUIT UNTIL YOU SIGN AND RETURN THE "OPT-IN CONSENT FORM" TO THE CLAIMS ADMINISTRATOR LISTED BELOW.

## II. DESCRIPTION OF THE LAWSUIT

This lawsuit is brought on behalf of current and former employees during the time period November 28, 2009 through the present who are or were employed by Brothers Petroleum, LLC, doing business as Brothers Food Mart or Brothers Food Mart, and Imad F. Hamdan in the State of Louisiana.

Collectively, these companies and individual are known as "Defendants." This lawsuit was filed on November 28, 2012 in the United States District Court for the Eastern District of Louisiana.

This lawsuit alleges, among other things, that Defendants' current and former employees:

1)   failed to receive payment for all hours worked, including, without limitation, for time spent transporting supplies and products between stores and traveling to and from Defendants' main office in employees' personal vehicles;

2)   failed to receive all wages owed to them, including straight-time and overtime pay for all hours worked; and

**Error! Unknown document property name.**

3)      failed to receive the federal minimum wage, as a result of Defendants deducting certain expenses from their wages, including, without limitation, expenses for uniforms and nametags.

Plaintiffs seek to recover payment for all hours worked and payment for unpaid overtime, including the interest thereon, statutory penalties, reasonable attorneys' fees, and litigation costs on behalf of themselves and all similarly situated workers. The Court has conditionally certified this case and authorized notice of this lawsuit be sent to all individuals who are currently employed or formerly have been employed by Brothers Petroleum, LLC, doing business as Brothers Food Mart or Brothers Food Mart in the State of Louisiana since November 28, 2012. DEFENDANTS DENY ALL ALLEGATIONS IN THIS LAWSUIT.

### III. <u>YOUR RIGHT TO PARTICIPATE IN THIS SUIT</u>

You may join, or "opt in" to, this lawsuit by mailing your completed and signed "Opt-In Consent Form" to Plaintiffs' counsel at the following address:

> BROTHERS FOOD MART FLSA LITIGATION
> c/o INSERT NAME OF CLAIMS ADMINISTRATOR
> INSERT ADDRESS

This form must be returned in sufficient time to have Plaintiffs' counsel file it with the federal court on or before INSERT DATE. If you fail to return the "Opt-In Consent Form" to Plaintiffs' counsel in time for it to be filed with the federal court on or before the above deadline date, you may not be able to participate in these claims under the FLSA.

If you file an "Opt-In Consent Form", your continued right to participate in these FLSA claims may depend upon a later decision by the District Court that you and the named Plaintiffs are actually "similarly situated" in accordance with federal law.

### IV. <u>EFFECT OF JOINING THIS SUIT</u>

If you choose to join in the suit, you will be bound by the judgment or settlement, whether it is favorable or unfavorable as to claims made in this action under the Fair Labor Standards Act. If the District Court or Jury rules in favor of Defendants, you will be entitled to no relief under the FLSA, if you join this action. By joining this lawsuit, you may designate the Named Plaintiffs and their attorneys as your agents to make decisions on your behalf concerning the litigation. If you desire, however, you may retain a different lawyer to represent you and have that lawyer enter an appearance in this lawsuit on your behalf, or you may choose not to retain a lawyer and represent yourself in this action.

2

## V.  <u>NO LEGAL EFFECT IN NOT JOINING THIS SUIT</u>

If you choose not to join this suit, you will not be affected by any judgment or settlement rendered in this case, whether favorable or unfavorable.  If you choose not to join in this lawsuit, you are free to file your own lawsuit.

## VI. <u>NO OPINION EXPRESSED AS TO THE MERITS OF THE CASE</u>

This Notice is for the sole purpose of determining the identity of those persons who wish to be involved in this lawsuit. Although the United States District Court for the Eastern District of Louisiana has authorized the sending of this Notice, the Court expresses no opinion regarding the merits of Plaintiffs' claims or Defendants' defenses.

## VII.  <u>NO RETALIATION PERMITTED</u>

**Federal law prohibits Defendants from discharging or in any other manner discriminating against you because you have exercised your rights under the Fair Labor Standards Act to join this action.**

## VIII. <u>YOUR LEGAL REPRESENTATION IF YOU JOIN</u>

Counsel for the named Plaintiffs are:

JACKSON + JACKSON
Jody Forester Jackson, Esq.
Mary Bubbett Jackson, Esq.
201 St. Charles Avenue, Suite 2500
New Orleans, Louisiana 70170
Telephone: (504) 599-5953
Facsimile: (888) 988-6499
Email: jjackson@jackson-law.net
      mjackson@jackson-law.net

PEIFFER ROSCA ABDULLAH & CARR, LLC
Joseph C. Peiffer, Esq.
David M. Abdullah, Esq.
Daniel J. Carr, Esq.
201 St. Charles Avenue, Suite 4610
New Orleans, Louisiana 70170
Telephone: (504) 523-2434
Facsimile: (504) 523-2464
Email: jpeiffer@praclawfirm.com
      dabdullah@praclawfirm.com
      dcarr@praclawfirm.com

SCHNEIDER WALLACE COTTRELL KONECKY
Carolyn H. Cottrell, Esq.
Peter B. Schneider, Esq.
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Telephone: (800) 689-0024
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
Email: ccottrell@schneiderwallace.com
pschneider@schneiderwallace.com

3

The name and address of Defendants' attorneys are:

PHELPS DUNBAR, LLP
Thomas H. Kiggans, Esq.
Jessica Coco Huffman
 II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802-5618                    .
Telephone: (225) 346-0285
Facsimile: (225) 381-9197
Email: kigganst@phelps.com
        huffmanj@phelps.com

**\*\*PLEASE NOTE\*\***
There is a two (2) year deadline for filing overtime claims or three (3) years if the violation was willful.
This deadline continues to run until you "opt-in" to this Collective Action.  To ensure your claim is timely
filed, return your "Opt-in Consent Form" as soon as possible so that your rights may be preserved.

4

**EXHIBIT  K**

## OPT-IN CONSENT FORM

**Dania Giselle Cruz Mejia, et al v. Brothers Petroleum, LLC, et al. Litigation**

**United States District Court for the Eastern District of Louisiana
Case No. 2:12-cv-02842**

**Complete And Mail To:**
CRUZ MEJIA ET AL V. BROTHERS PETROLEUM, LLC ET AL
ATTN: Natalie White
Schneider Wallace Cottrell Konecky LLP
3700 Buffalo Speedway, Suite 1100
Houston, TX 77098

| Name:<br><br>_____ (Please Print) | Date of Birth: |
|---|---|
| Address: | Phone No. 1:<br><br>Phone No. 2: |

## CONSENT TO JOIN COLLECTIVE ACTION
**Pursuant to the Fair Labor Standards Act, 29 U.S.C. 201, *et seq.***

1.   I consent and agree to pursue my claims relating to and arising from Defendants' alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* in connection with the above-referenced lawsuit.

2.   I have worked as a/an (**title**) _____ or similarly titled position for Defendant Brothers Petroleum, LLC in (**city, state**) _____ from on or about (**date**) _____ to on or about (**date**) _____.

4.   I understand that this lawsuit is being filed as a collective action under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* I hereby consent, agree, and opt-in to become a named Plaintiff herein and be bound by any judgment of the Court or any settlement of this action.

5.   I, as a named Plaintiff, specifically authorize my attorneys, Schneider Wallace Cottrell Konecky LLP, Peiffer, Rosca, Abdullah & Carr, LLC, Ellaine Carr & Associates, PLLC, and Jackson+Jackson, PLLC as my agents, to prosecute this lawsuit on my behalf and to negotiate a settlement of any and all claims I have against the Defendants in this litigation.

| _____ (Date Signed) | _____ (Signature) |
|---|---|

**\*\*IMPORTANT NOTE\*\***
**Statute of Limitations concerns mandate that you return this form as soon as possible to preserve your rights.**