UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**DANIA GISSELL CRUZ MEJIA, ET AL.**                    **CIVIL ACTION**

**VERSUS**                                             **NO. 12-2842**

**BROTHERS PETROLEUM, L.L.C., ET AL.**                 **SECTION "R" (3)**

### ORDER

On January 21, 2015, Plaintiffs' Motion for Protective Order [Doc. #170] came on for oral hearing before the undersigned.  Present were Mary Jackson and David Abdullah on behalf of plaintiffs and Thomas Kiggans, Joseph DiRosa, and Jessica Huffman on behalf of defendants.  After the oral hearing, the Court took the motion under advisement.  Having reviewed the motion, the opposition, and the case law, the Court rules as follows.

**I.      Factual Background**

On November 28, 2012, plaintiffs Dania Gissell Cruz Mejia, Maria Elisa Bueso Mejia, Martha L. Martinez Balleza and Esther Sanchez Torres filed this case against two defendants, Brothers Petroleum, L.L.C. ("Brothers Petroleum") and Imad F. Hamdan.  In their complaint, plaintiffs asserted various claims under the Fair Labor Standards Act of 1938 (the "FLSA"), 29 U.S.C. § 201 *et seq.*, in connection with their former employment at the Brothers Food Mart convenience stores. Plaintiffs asserted claims only on their own behalf, and not as a collective action under 29 U.S.C. § 216(b).

On November 19, 2013, almost a year after they first initiated these proceedings, plaintiffs requested leave to file their First Amended Collective Action Complaint ("First Amended Complaint").  In the First Amended Complaint, plaintiffs for the first time sought to pursue their FLSA claims as a collective action. Plaintiffs also sought to add two new plaintiffs, Claudia Wilson and Dora Pineda. Defendants did not oppose plaintiffs' request for leave to file the First Amended Complaint, and this Court subsequently allowed plaintiffs to file the First Amended Complaint.

On July 16, 2014, the District Court conditionally certified a collective action consisting of all current and former hourly employees who worked at any of defendants' Brothers Food Mart convenience stores in Louisiana during the period November 28, 2009 through the present.  Pursuant to this Court's order, defendants provided plaintiffs with lists of potential collective action members on August 15, 2014.

## II.    The Parties' Contentions

### A.    Plaintiffs' Motion

Only 63 plaintiffs have opted in to this lawsuit.  Plaintiffs seek a protective order to prevent defendants and/or their agents, employees, and attorneys from contacting plaintiffs or any potential opt-in plaintiffs of the FLSA proposed collective action for the purpose of intimidating, harassing, threatening, or otherwise retaliating or threatening to retaliate against them if they participate in this lawsuit. Counsel for plaintiffs allege that they have been notified that agents of defendants have repeatedly called former employees and threatened their current and future employment if they participate in the action.  Plaintiffs also ask that remedial notice be sent in Arabic and English, at defendants' expense, to all putative collective members who have not yet opted in. Plaintiffs also ask that the opt-in period (which expired on December 26, 2014) be re-opened and extended for a

period of 60 days.

Plaintiffs note that the District Court conditionally certified this collective action and ordered defendants to produce a list of all potential opt-in plaintiffs.  Instead of complying with the order, defendant Hamdan invoked his Fifth Amendment right against self-incrimination and refused to provide a list of undocumented workers.  In addition, defendants have not produced a list of undocumented workers because the District Court stayed this action as to them, and the stay is still in effect.

Since they mailed the notice to opt-in plaintiffs, counsel contend that they have been contacted by numerous potential plaintiffs who have informed them that defendants have contacted them to coerce them not to participate in the lawsuit.  This is supported by the affidavit of Salman Aleses attached to the motion.  Citing case law, plaintiffs note that courts often restrict improper communications such as these.  They also note that courts order that truthful curative letters be sent in these circumstances.

### B.      Defendants' Opposition

Defendants contend that an order that limits communications between parties and potential collective actions members is a prior restraint on speech and that such orders apply equally to communications by plaintiffs and defendants to collective action members.  They maintain that an order that limits collective action contacts must be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties.

Defendants argue that the timing of the motion is suspect and based solely on the low opt-in rate.  They note that plaintiffs first mailed notice on September 26, 2014 but waited until January

13, 2015 to file their motion.  The affidavit of Aleses was even executed on November 6, 2014, two months before plaintiffs filed their motion.  They note that plaintiffs never complained of any alleged threats throughout all of the communications between counsel.

Defendants contend that the low opt-in rate could be due to the fact that most of the individuals listed as potential plaintiffs realized that they had been paid and thus have no claim against defendants.  Citing their own declaration of Abu Osama, defendants' bookkeeper, defendants allege that Osama never spoke to Aleses about this lawsuit.  Osama has had no contact with Aleses since his employment ended in June 2014.  Defendants maintain that Ihsan Al Muzien never initiated contact with Aleses;  Aleses has initiated all communications with him.  Muzien and Aleses are long-time friends.  They maintain that Aleses made all threats against Ziad Mousa, suggesting that the next time Mousa went home, Aleses's uncle, who is in the Jordanian Parliament, would do something to him.  Defendants contend that Aleses's statements do not support plaintiffs' claims as they allegedly involve only conversations after he joined the lawsuit, and he has not dropped out of it.  Defendants maintain that the allegations in the case law cited by plaintiffs were supported by considerably more evidence.  Defendants argue that counsels' unsupported hearsay evidence can not support their motion.

Even were the Court inclined to grant the motion, defendants contend that the protective order is overbroad.  Defendants note that plaintiffs ask that they be prohibited from speaking to former employees about any topic.  The protective order as worded would prohibit one defendant from speaking with his long-time friend and his brother.  Defendants argue that the protective order should be limited to communications about this lawsuit.

Defendants agree that they can not communicate with the opt-in plaintiffs but note that the

4

opt-in period has expired and they have the right to contact former employees who will support their defense that they paid overtime. Defendants also ask that any protective order not include counsel for defendants nor Abdel Raoyf Mousa or Mousa's companies because there is no evidence that any of them have spoken to plaintiffs.

Defendants also argue that no corrective notice be issued because even were the Court to believe plaintiffs' evidence, there is only evidence that defendants contacted one individual.   If the Court issues a corrective notice, defendants also contend that it be modified.   Lastly, they ask the Court – should it do so – to extend the opt-in period for only 30 days.

### C.    Plaintiffs' Reply

Plaintiffs now submit the affidavit of Mousa Almuzayyan, which, they argue, supports Aleses's affidavit.   In his affidavit, Almuzayyan attests that defendant Mousa contacted him and threatened to fire Almuzayyan's brother and son if he did not drop the lawsuit.   Plaintiffs note that defendant Mousa and Muzien admit that they spoke to Aleses about the lawsuit and told him that his claims had no merit as he had been paid properly.   Aleses maintains that the affidavits attached to defendants' motion are untrue and misleading.

Citing case law, plaintiffs argue that a single affidavit from a collective member is sufficient evidence to show that an employer engaged in coercive communications.   Plaintiffs distinguish the case law on which defendants rely by noting that there, plaintiffs preemptively sought a protective order before they had evidence of any abusive communications.

Lastly, plaintiffs note that they are amenable to fine-tuning the protective order to remedy any charge of overbreadth.

## III.    Law and Analysis

Rule 23 of the Federal Rules of Civil Procedure governs class actions in federal court. Class actions serve an important function in our system of civil justice. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). They present, however, opportunities for abuse as well as problems for courts and counsel in the management of cases.  *Id.* at 99-100.  Communications that misrepresent the status or effect of the pending action also have been found to have a potential for confusion and/or to adversely affect the administration of justice. *Id.* at 101 n.12.  Courts have condemned attempts in a communication to affect a class member's decision to participate in the litigation, or to undermine a class plaintiff's cooperation with confidence in class counsel.  *In re School Asbestos Litig.*, 842 F.2d 671, 682 n.23 (3rd Cir.1988).  Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.  *Gulf Oil*, 452 U.S. at 99.  However, this discretion is not unlimited, and indeed is bounded by the relevant provisions of the federal rules.  *Id.*

Communications found violative of the principles of Rule 23 include misleading communications to the class members concerning the litigation. *Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 632 (N.D. Tex. 1994).  Unlimited contacts by defendants with class members or potential class members may serve to undermine the purposes of Rule 23 by allowing defendants to reduce their liability by encouraging potential class members not to join the litigation. Thus, where an alleged class action has been filed but certification has not yet been decided, a court may issue a limitation on *ex parte* contact under Rule 23, if it is clear the defendant is attempting to engage in conduct which would undermine the purposes of the rule. *Burrell v Crown Central Petroleum, Inc.*, 176 F.R.D. 239, 243 (E.D. Tex. 1997).  This rule also applies after a district court has certified a class, and the notices have been approved.  *Kleiner v. First Nat'l Bank of Atlanta*, 751

F.2d 1193, 1196-97 (11th Cir. 1985).

An order limiting communications between parties and class members, however, is a prior restraint on speech.  *Id.*  A district court should only consider the narrowest possible relief "that limits speech as little as possible consistent with the rights of the parties under the circumstances." *Gulf Oil*, 452 U.S. at 102. The movant does not have to show specific detriments to plaintiffs or the plaintiff class.  *Kleiner*, 751 F.2d at 1206. A showing of actual harm is not necessary. *Hampton Hardware*, 156 F.R.D. at 633.  "It is unnecessary for a trial court to issue particularized findings of abusive conduct when a given form of speech is inherently conducive to overreaching and duress." *Kleiner*, 751 F.2d at 1206.

Nonetheless, an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. *See Gulf Oil*, 452 U.S. at 101. Such a weighing should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances. Courts should not limit communications without a specific record showing by the moving party of the particular abuses by which it is threatened.  *Id.* at 102. Absent a clear record and specific findings of realized or threatened abuses, an order can not be justified under the relevant standard.  *Burrell*, 176 F.R.D. at 244.

A review of the evidence in this case – two affidavits, challenged by competing affidavits, and the statements of plaintiffs' counsel – reveals that the evidence is insufficient to warrant the grant of a protective order.  District courts require far more than the affidavits of two class members – class members who have opted in to the class and have not opted out despite the alleged threats.

7

*See, e.g., Wiginton v. Ellis*, No. 02 C 6832, 2003 WL 22232907 (N.D. Ill. Sept. 16, 2003) (noting that e-mail communication sent by employer to employees and one contradicted affidavit inadequate to warrant protective order); *Payne v. The Goodyear Tire & Rubber Co.*, 207 F.R.D. 16 (D. Mass. 2002) (holding that allegations that employer influenced potential plaintiffs during home inspections and information on lawsuit posted to employer's website insufficient to warrant protective order); *Basco v. Wal-Mart Stores, Inc.*, No. Civ. A. 00-3184, 2002 WL 272384 (E.D. La. Feb. 25, 2002) (finding non-probative evidence of employer's contact with managerial employee inadequate to warrant protective order); *Burrell v. Crown Cent. Petroleum, Inc.*, 176 F.R.D. 239, 241-245 (E.D. Tex. 1997) (denying plaintiff's motion for limitation on defendant's *ex parte* communications with class members after finding communication through e-mail, announcements and meetings were not misleading, coercive, or improper attempts to undermine Rule 23).  And counsel's statements that defendants have contacted other plaintiffs and potential plaintiffs is hearsay and therefore properly excluded as evidence.  *See Impervious Paint Indus. v. Ashland Oil*, 508 F. Supp. 720, 722 (W.D. Ky. 1981) ("They were supported only by hearsay reports, plaintiffs' counsel reporting that they had received telephone calls from class members who either refused to identify themselves or insisted on anonymity before they would detail the nature of the threats.").

And while plaintiffs argue that defendant Mousa and Muzien admit that they spoke to Aleses about the lawsuit and told him that his claims had no merit as he had been paid properly, this is only half true.  Mousa and Muzien did not contact Aleses according to their affidavits; he contacted them. That is an entirely different factual picture from what plaintiffs allege here.

Plaintiffs have simply not met their burden here.  Moreover, the Court finds the timing of this motion suspect.  The affidavit of Aleses was executed on November 16, 2014, two months

before plaintiffs filed this motion, and well before the opt-in deadline.  And while plaintiffs argue that they filed the motion this late because they were attempting to obtain more affidavits, the simple truth is that they only obtained one other.  This is simply insufficient.

## IV.   Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Plaintiffs' Motion for Protective Order [Doc. #170] is DENIED.

New Orleans, Louisiana, this 13th day of February, 2015.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**