UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DANIA GISELLE CRUZ MEJIA, ET AL. | CIVIL ACTION |
| VERSUS | NO. 12-2842<br>c/w NO. 13-4831 |
| BROTHERS PETROLEUM, LLC, ET AL. | SECTION "R" (3) |

### ORDER AND REASONS

Before the Court are: (1) defendants' motion to extend the stay in this case,[1] and (2) defendants' objections to plaintiffs' requests for discovery.[2] The Court extends the stay in this case except as to document discovery to which neither party has objected.

### I. BACKGROUND

This is a collective action lawsuit seeking damages for alleged violations of overtime and minimum wage provisions of the Fair Labor Standards Act (FLSA). 29 U.S.C. §§ 206, 207. Defendants are a network of convenience stores operating under the name "Brothers Food Mart," and the owners of the businesses—Imad Faiez Hamdan, Abdel Raoyf Mousa, and

---

[1] R. Doc. 264.
[2] R. Doc. 275.

Ziad Mousa. Plaintiffs allege that they were employed as cooks, cashiers, store operators, and similar positions at the convenience stores, and that they worked between fifty and eighty hours per week but were not paid overtime wages.[3]

On July 16, 2014, Judge Helen Berrigan conditionally certified the plaintiffs to proceed as a collective action and requested a full list of opt-in plaintiffs.[4] On August 5, 2014, defendants moved to stay all proceedings because defendants had become aware that the U.S. Attorney's Office was conducting a criminal investigation into defendant Imad Hamdan's alleged hiring of undocumented workers.[5] On August 15, 2014, before the motion to stay was fully briefed, defendants produced a partial list of employees who worked for Hamdan at the Brother Food Mart convenience stores.[6] Hamdan invoked his Fifth Amendment right against self-incrimination "with respect to the identity of any additional opt-in plaintiffs."[7] On September 3, 2014, Judge Berrigan imposed a limited stay on the proceedings.[8] She ordered

---

[3] R. Doc. 205 at 10-11.
[4] R. Doc. 79.
[5] R. Doc. 88.
[6] R. Doc. 95-1. This list included only potential plaintiffs who worked for Hamdan. Plaintiffs added the Mousas as defendants in an amended complaint filed on September 11, 2014. *See* R. Doc. 113. Thus, plaintiffs were never given a list of Mousa employees.
[7] *Id.*
[8] R. Doc. 107.

defendants to produce a full list of all documented workers, but she stayed discovery as to any undocumented workers.[9]

On September 12, 2014, the case was reassigned to this Section.[10] The Court extended the partial stay on December 11, 2014,[11] and again on June 12, 2015.[12] On September 9, 2015, the Court converted the partial stay into a complete stay because of the active criminal investigation and close connection between the civil and criminal cases.[13] Between September 3, 2014, when the limited stay was imposed, and September 9, 2015, when the complete stay was imposed, plaintiffs were free to conduct discovery as to the documented workers, and several plaintiffs opted into the collective action. Following the Court's originally imposed complete stay, it has extended the stay three times due to the continuing active criminal investigation.[14]

On March 29, 2019, the government issued an indictment naming Hamdan and Ziad Mousa. Shortly thereafter, defendants filed the instant motion to extend the stay on the basis of the indictment.[15] On April 23, 2019,

---

[9] *Id.* at 6.
[10] R. Doc. 114.
[11] R. Doc. 161.
[12] R. Doc. 203.
[13] R. Doc. 211.
[14] R. Doc. 233; R. Doc. 249; R. Doc. 259.
[15] R. Doc. 264.

the Court held a status conference, at which the Court raised the possibility of the parties' agreeing to limited document discovery pertaining to documented workers in order to alleviate potential prejudice to plaintiffs given the extended length of the stay. To this end, the Court ordered plaintiffs to identify the materials that they were seeking from defendants.[16] It ordered the defendants to confer with Hamdan's and Ziad Mousa's criminal attorneys and brief their position on the disclosure of the requested materials.[17] The Court also ordered defendants to produce a list of all documented workers that had not yet been disclosed to plaintiffs.[18]

On May 9, 2019, defendants filed objections to plaintiffs' requested materials.[19] Plaintiffs have responded to the objections.[20] They also oppose the defendants' motion to extend the stay.[21]

## II. LEGAL STANDARD

When a defendant in a civil case is facing criminal charges, a district court may, in its discretion, stay the civil action. *United States v. Kordel*, 397

---

[16] R. Doc. 273.
[17] *Id.*
[18] *Id.*
[19] R. Doc. 274.
[20] R. Doc. 279.
[21] R. Doc. 266.

U.S. 1, 12 (1970); *see also In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990) ("The stay of a pending matter is ordinarily within the trial court's wide discretion to control the course of litigation, which includes authority to control the scope and pace of discovery."). The Fifth Circuit has instructed that, in ruling on requests for stays of the civil side of parallel civil/criminal proceedings, "judicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other." *United States v. Gieger Transfer Serv., Inc.*, 174 F.R.D. 382, 385 (S.D. Miss. 1997) (citing *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962)).

When determining whether a stay is warranted, courts consider: (1) the extent of overlap between the criminal case and the civil case; (2) the status of the criminal case, including whether the defendant has been indicted; (3) the interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to the plaintiff caused by the delay; (4) the interests of and the burden on the defendant; (5) the interests of the courts; and (6) the public interest. *Alcala v. Tex. Webb Cty.*, 625 F. Supp. 2d 391, 399 (S.D. Tex. 2009) (collecting district court cases in the Fifth Circuit applying this test). Of these, the first factor is the most important. *Dominguez v. Hartford Fin. Servs. Grp., Inc.*, 530 F. Supp. 2d 902, 907 (S.D. Tex. 2008). Although

5

district courts have wide discretion to determine whether a stay is warranted, "[e]ven discretionary stays . . . will be reversed when they are immoderate or of an indefinite duration." *In re Ramu Corp.*, 903 F.2d at 318 (internal citations omitted).

## III. DISCUSSION

Defendants request that the Court extend the complete stay in this case. The Court finds that such an extension is warranted because many of the same conditions that formed the basis for the Court's initial decision to impose a stay still exist, and the issuance of an indictment has only strengthened the basis for the stay.

Under the first *Alcala* factor, there is significant overlap between the criminal case and the civil case. For example, the allegations that Hamdan and Mousa failed to withhold taxes and underreported their employees' income are closely connected to the civil allegations that defendants underpaid their employees by failing to pay overtime wages. Further, there is a significant likelihood that key witnesses—such as Hamdan, Mousa, and the store managers[22]—would assert their Fifth Amendment rights to avoid

---

[22] Although the store managers are not included in the current indictment, the allegations in the indictment refer multiple times to actions

6

possible criminal exposure. A party claiming a Fifth Amendment privilege can constitute a "special circumstance" in which a stay is necessary "to prevent a party from suffering substantial and irreparable prejudice." *SEC v. First Fin. Grp. of Tex. Inc.*, 659 F.2d 660, 668 (5th Cir. 1981). When a significant portion of questions posed to a defendant would likely result in the defendant's asserting his Fifth Amendment rights, this weighs heavily in favor of a stay. *Dominguez v. Hartford Fin. Servs. Grp., Inc.*, 530 F. Supp. 2d 902, 907 (S.D. Tex. 2008). The Court cannot avoid this problem by requiring the witnesses to testify under a protective order. *See Andover Data Servs., a Div. of Players Computer, Inc. v. Statistical Tabulating Corp.*, 876 F.2d 1080, 1084 (2d Cir. 1989) (holding that "a non-consenting witness may not be forced to answer potentially incriminating questions in reliance upon [a protective] order" because "the protections of a Rule 26(c) order simply are not as 'certain' as the protections of either the fifth amendment or a statutory grant of use immunity"). The first factor, the most important, therefore weighs heavily in favor of a stay.

Under the second factor, the recent return of a criminal indictment requires that the Court "strongly consider staying the civil proceedings until

---

taken by store managers. The managers thus face a substantial threat of future criminal proceedings.

the related criminal proceedings are resolved." *Whitney Nat. Bank v. Air Ambulance ex rel. B & C Flight Mgmt., Inc.*, No. 04-2220, 2007 WL 1468417, at *3 (S.D. Tex. May 18, 2007); *see also Cazaubon v. MR Precious Metals, LLC*, No. 14-2241, 2015 WL 4937888, at *3 (E.D. La. Aug. 17, 2015) (finding that a stay is more likely to be necessary after an indictment is issued because "there is greater risk of self-incrimination"). Skipping to the fourth factor for the moment, a stay is necessary when, as here, a defendant must choose between exercising his Fifth Amendment rights and jeopardizing his defense in a civil suit. *Doe v. Morris*, No. 11-1532, 2012 WL 359315, at *2 (E.D. La. Feb. 2, 2012).

Finally, under the fifth and sixth factors, the Court has an interest in adjudicating this dispute efficiently. *State Farm Lloyds v. Wood*, No. 06-503, 2006 WL 3691115, at *3 (S.D. Tex. Dec. 12, 2006). A stay serves this goal because it allows the Court to avoid the lengthy discovery disputes prompted by requiring the defendants to object individually to every document request and question that implicates their Fifth Amendment rights. Further, "[t]he public has an interest in the resolution of disputes with minimal delay, but only to the extent that the integrity of the defendant's rights can be maintained." *Doe*, No. 11-1532, 2012 WL 359315, at *2.

Plaintiffs argue that, under the third, fifth, and sixth *Alcala* factors, plaintiffs are prejudiced, and the public interest is not served by extending the stay because this case has already been stayed for multiple years.[23] But a "plaintiff [must] establish more prejudice than simply a delay in his right to expeditiously pursue his claim." *State Farm Lloyds*, No. 06-503, 2006 WL 3691115, at *2. Similarly, the public interest in proceeding expeditiously is outweighed by the need to protect the defendants' constitutional rights. Plaintiffs have asserted additional prejudice because potential opt-in plaintiffs may move or become harder to contact over time.[24] But plaintiffs have already had several workers opt-in to this litigation. For those workers who have not yet received official notice, their claims have been tolled.[25]

Ultimately, even if plaintiffs suffer some prejudice, this harm is subordinate to the Court's need to protect defendants' Fifth Amendment rights. *See Volmar Distribs., Inc. v. N.Y. Post Co.*, 152 F.R.D. 36, 40 (S.D.N.Y. 1993) (recognizing that a stay "will result in inconvenience and delay to plaintiffs" but holding that "under settled authority the Fifth Amendment is the more important consideration."). Now that an indictment has been issued, the requirements of the Speedy Trial Act will ensure that the

---

[23] R. Doc. 266 at 5-6.
[24] *Id.* at 5.
[25] *See* R. Doc. 255.

criminal action proceeds to its conclusion without unnecessary delay. Plaintiffs' prejudice is also mitigated by the agreement between the parties to conduct limited discovery to the extent possible before the conclusion of the criminal proceedings.

The Court finds that a stay is necessary to protect the defendants' right to a fair trial in the criminal case. The *Alcala* factors therefore weigh in favor of a stay, which is the only way to ensure that defendants' rights are protected. *See State Farm Lloyds*, No. 06-503, 2006 WL 3691115, at *3 ("[T]he public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant." (quoting *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y. 2003))).

### A. Limited Discovery by Agreement

At the Court's suggestion, the parties have agreed to conduct limited document discovery, which will relate only to issues outside the scope of the criminal case, to help alleviate the burden to plaintiffs caused by the length of the stay. *See Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962) (stating that, when appropriate, "the trial judge should use [her] discretion to narrow the range of discovery" for civil proceedings in which a defendant is the subject of a criminal investigation); *see also United States v. Parcels of Land*, 903 F.2d 36, 44 (1st Cir. 1990) ("[S]o long as a district court

attempts to accommodate a claimant's fifth amendment interests, the nature and extent of accommodation should be left primarily to that court's discretion."). To this end, plaintiffs requested thirteen categories of documents from defendants after the status conference. These are: (1) payroll summaries that show hours worked and amounts paid to employees by the week; (2) check stubs; (3) cancelled paychecks; (4) receipts for cash payments; (5) receipts for any other payments; (6) schedules for cashiers, operators, and cooks; (7) timesheets and clock-in and -out records; (8) W2 forms; (9) any other documents showing payments made or time worked for cashiers, operators, and cooks; (10) a list identifying all non-exempt hourly documented cashiers, operators, and cooks; (11) communications concerning documented cashiers', operators', and cooks' hours worked or compensation; (12) training, orientation, and interview documents concerning the hours worked by documented cashiers, operators, and cooks; and (13) policies, practices, and procedures regarding documented cashiers', operators', and cooks' timekeeping and compensation, including business expenses, reimbursements, benefits, deductions, bonuses, and commissions.[26]

---

[26] *See* R. Doc. 275 at 1-2.

Defendants have objected to five of these document categories. These are: (4) receipts for cash payments; (5) receipts for other payments; (10) a list identifying all non-exempt hourly documented workers; (12) training, orientation, and interview documents; and (13) policies, practices, and procedures regarding timekeeping and compensation.[27] Defendants object to producing receipts for cash and other payments because these receipts outside of the official payroll could indicate that the defendants made payments in cash that they did not report for tax purposes, or that they made payments to undocumented workers.[28] Defendants object to producing a list of documented workers employed by the Mousa defendants because they argue that the list could serve as an admission that other hourly workers not included on the list were undocumented.[29] Defendants object to producing training materials and workplace policies and procedures because they argue that, to the extent that defendants used different documents to train and interview documented workers and undocumented workers, producing the materials would be an admission of the existence of undocumented workers.[30]

---

[27]  *Id.* at 2-3.
[28]  *Id.* at 2.
[29]  *Id.* at 4.
[30]  *Id.* at 3.

The Court has authorized plaintiffs to proceed with discovery only to the extent that this discovery does not overlap with the criminal proceedings. For the reasons pointed out by defendants in their objections, the Court finds that disclosing these documents before the conclusion of the criminal case could affect defendants' right to a fair criminal trial or hinder their ability to defend themselves in the civil case. The Court therefore sustains defendants' objections. The parties shall promptly exchange the other categories of documents. If documents or copies of documents in these categories are not currently in defendants' possession because they have been turned over to the government, defendants shall produce these documents as soon as the government returns them.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to extend the stay is GRANTED. The complete stay is extended, except as to the limited document discovery agreed to by the parties. All other discovery and motion practice shall remain closed.

New Orleans, Louisiana, this __30th__ day of July, 2019.

*Sarah Vance*
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE